1  William H. Emer, Bar No. 53482
   WEmer@perkinscoie.com
2  Steven C. Gonzalez, Bar No. 191756
   SGonzalez@perkinscoie.com
3  **PERKINS COIE LLP**
   1620 26th Street
4  Sixth Floor, South Tower
   Santa Monica, CA 90404-4013
5  Telephone: 310.788.9900
   Facsimile: 310.788.3399
6
   David R. Ongaro, Bar No. 154698
7  DOngaro@perkinscoie.com
   **PERKINS COIE LLP**
8  Four Embarcadero Center
   Suite 2400
9  San Francisco, CA 94111-4131
   Telephone: 415.344.7000
10 Facsimile: 415.344.7050

11 Attorneys for Defendant
   Green Diamond Resource Company

12
                   UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

                                              CV 07       5589
15
   JASON GRAY, on behalf of himself and   | No. _____
16 others similarly situated,
                                          | DECLARATION OF VALERY WILLIAMS
17                 Plaintiff,             | IN SUPPORT OF DEFENDANT'S NOTICE
                                          | OF REMOVAL
18       v.
                                          | [Superior Court Case No. RG07348848]
19 GREEN DIAMOND RESOURCE
   COMPANY; SIMPSON TIMBER
20 COMPANY; and DOES 1 to 50, Inclusive,

21                 Defendants.

22
23
24
25
26
27
28

I, Valery Williams, hereby declare and state as follows:

1. I am over the age of eighteen and competent to testify in the above-captioned matter. I declare the following statements to be true based on my own personal knowledge. This declaration is based on my experience, my personal knowledge, and the business records of Green Diamond Resource Company and its subsidiary California Redwood Company kept in the ordinary course of business, as well as my review of personnel data reports prepared by my colleagues.

2. I am employed by Defendant Green Diamond Resource Company ("GDRC") as its Internal Audit Manager. I have been employed in that position since August 2004. I have a Bachelors of Arts in Accounting and I am a Certified Public Accountant.

3. GDRC is a Washington corporation. Its headquarters is in the State of Washington. I have reviewed corporate records for California Redwood Company ("CRC"). CRC is a wholly-owned corporate subsidiary of GDRC. CRC is also a Washington corporation with its headquarters in the State of Washington. At its original incorporation, CRC was known as California Redwood Acquisition Company. California Redwood Acquisition Company has since been renamed California Redwood Company, but it remains the same legal entity, referred to as CRC in this declaration.

4. I have reviewed the employment records of GDRC, and they reflect that Jason Gray has never been an employee of Green Diamond Resource Company.

5. On January 2, 2007, the California lumber manufacturing assets of Simpson Timber Company ("STC") were acquired by California Redwood Acquisition Company. By agreement with STC, California Redwood Acquisition Company offered to employ all of the employees of Simpson Timber Company's California Lumber Division, effective January 1, 2007.

6. Jason Gray accepted that offer of employment and he became an employee of California Redwood Acquisition Company effective January 1, 2007. When California Redwood

-2-
DECLARATION OF VALERY WILLIAMS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL
LEGAL13684880.1

Acquisition Company was renamed California Redwood Company, it remained the employer of Jason Gray.

7.  Jason Gray was employed by CRC until the effective date of his voluntary resignation as of June 17, 2007. During his employment with CRC, Jason Gray worked as a millwright at the Korbel, California, sawmill owned and operated by CRC.

8.  On January 2, 2007, CRC acquired personnel and time-keeping records together with the assets of STC's California Lumber Division. I have reviewed those personnel records, and they show that Jason Gray was employed by STC as a millwright at the Korbel, California, mill beginning on November 22, 2005, and ending on December 31, 2006.

9.  My review of CRC records reveals the following: on May 23, 2007 Jason Gray tendered his resignation to CRC to be effective on June 17, 2007. On May 25, 2007, a CRC employee reported that Jason Gray had accessed confidential employee information stored on company servers. It was also reported that Jason Gray printed and distributed this confidential information to other employees. On May 31, 2007, Jason Gray was placed on paid leave while the company investigated these reports. The company's investigation found that Jason Gray had improperly accessed confidential information concerning other employees and he had printed and distributed confidential employee information to other employees. The investigation also found that Jason Gray used work time to search and review company computer files with confidential employee information, which was a neglect of his work duties. The company found that these actions by Jason Gray were a violation of company policy and he was notified on June 1, 2007, that he would be placed on unpaid suspension for the remainder of his employment (i.e., until June 17, 2007) with CRC.

10.  I have reviewed the Complaint filed by Jason Gray that initiated the above-captioned matter. As I understand the Complaint, Jason Gray has generally alleged that all employees of GDRC and STC and any subsidiaries doing business as Green Diamond Resource Company and/or Simpson Timber Company who are subject to meal break requirements under California law have been denied meal break opportunities and should be compensated for missed meal breaks and awarded statutory penalties for delayed payment of wages due. It is also my

-3-

DECLARATION OF VALERY WILLIAMS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL
LEGAL13684880.1

understanding of the complaint that Jason Gray's allegations are for a claim period beginning October 1, 2003, and ending October 1, 2007, without specific allegations, qualifications, or limitations concerning particular employees or particular dates when meal break opportunities were allegedly not provided.

11. During the time when Jason Gray was an employee of STC and CRC, he was a member of the International Association of Machinists Local W-98 and employed under the terms of a collective bargaining agreement. I have reviewed the collective bargaining agreement, and it provides employees such as Jason Gray with a grievance process so that any violations of working conditions can be raised with and addressed by management.

12. I have reviewed the personnel records of STC and CRC for any grievances filed by Jason Gray. During his period of employment with STC and with CRC, Jason Gray never filed a grievance concerning meal break time.

13. I have also reviewed records pertaining to grievances filed by employees of STC or CRC, and those records reflect that during the entire claim period (as described in paragraph 10 above), no such employee filed a grievance related to meal periods.

14. Using employment and time keeping records acquired from STC and the records of CRC for the October 1, 2003, through October 1, 2007, claim period, and assuming for the purpose of this calculation only that the general allegations of Jason Gray's complaint were proven to be true, I estimate the hypothetical cost of liability for CRC and STC to be at least $6 million.

15. I estimated the hypothetical cost of the alleged meal-break violations using the following assumptions and methods:

    a. The data used for the hypothetical cost estimate was extracted from the Time Collection System (TCS), which is the system of record for hours worked for all union and non-union hourly employees.

    b. In deriving this estimate, I assumed, based on Plaintiff's allegations in his complaint, that no hourly employee was granted a meal break for any day worked from October 1, 2003, through September 30, 2007.

-4-

    i. I calculated a meal period penalty (i.e., one hour of straight time pay) for any day in which the records reflect that an employee worked over 5 hours. I calculated a penalty for an alleged second meal period violation when an employee worked over 12 hours in a specific day.

    ii. In calculating the meal period penalty, I assumed that the rate of pay was the employee's job rate for that day.

  16. Using the foregoing assumptions and methodology, I calculated that from October 1, 2003, through September 30, 2004, hourly STC employees worked for a total of 72,815 shifts of over 5 hours in length or over 12 hours in length. Applying Plaintiff's claim that Defendant consistently denied full or timely lunches to its hourly employees, such that they would each be entitled to one hour of premium pay under Labor Code section 226.7, the annual premium pay entitlement for those hourly employees would be $1,232,382.

  17. Using the foregoing assumptions and methodology, I calculated that from October 1, 2004, through September 30, 2005, hourly STC employees worked for a total of 79,772 shifts of over 5 hours in length or over 12 hours in length. Applying Plaintiff's claim that Defendant consistently denied full or timely lunches to its hourly employees, such that they would each be entitled to one hour of premium pay under Labor Code section 226.7, the annual premium pay entitlement for those hourly employees would be $1,360,917.

  18. Using the foregoing assumptions and methodology, I calculated that from October 1, 2005, through September 30, 2006, hourly STC employees worked for a total of 79,676 shifts of over 5 hours in length or over 12 hours in length. Applying Plaintiff's claim that Defendant consistently denied full or timely lunches to its hourly employees, such that they would each be entitled to one hour of premium pay under Labor Code section 226.7, the annual premium pay entitlement for those hourly employees would be $1,383,882.

  19. Using the foregoing assumptions and methodology, I calculated that from October 1, 2006, through September 30, 2007, hourly STC and CRC employees worked for a total of 68,286 shifts of over 5 hours in length or over 12 hours in length. Applying Plaintiff's claim that Defendant consistently denied full or timely lunches to its hourly employees, such that they

-5-

would each be entitled to one hour of premium pay under Labor Code section 226.7, the annual premium pay entitlement for those hourly employees would be $1,206,131.

20. Adding up all of these annual figures, the total premium pay amount that Plaintiff appears to be claiming on behalf of hourly STC and CRC employees, from October 1, 2003, through September 30, 2007, is $5,183,311.

21. I further calculated an estimated waiting time penalty as Plaintiff has alleged based on the number of hourly STC and CRC employees who terminated employment with STC or CRC from October 1, 2004, through September 30, 2007. I took each such employee's daily rate upon termination, multiplied by an 8 hour day, and multiplied by 30 days. This calculation yielded a hypothetical waiting time penalty figure of $888,294.

22. Aggregating the purported claimed premium pay with the alleged waiting time penalty amounts yields a total claimed amount of $6,071,605.

23. I have excluded GDRC's hourly employees from my estimate of the hypothetical cost of liability because Jason Gray was never an employee of GDRC. If I were to include GDRC employees (who are not mill (shift) workers) within the scope of the estimated theoretical cost of liability for the claim period, the estimated cost would be substantially increased.

I declare, under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing statements are true and correct to the best of my knowledge.

Signed this 31st day of October 2007, at Shelton, Washington.

_____
Valery Williams

-6-
DECLARATION OF VALERY WILLIAMS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL
LEGAL13684880.1