1   KINGSLEY & KINGSLEY, APC
    GEORGE R. KINGSLEY, ESQ. SBN-38022
2   ERIC B. KINGSLEY, ESQ.   SBN-185123
    16133 VENTURA BL., SUITE 1200
3   ENCINO, CA 91436
    (818) 990-8300, FAX (818) 990-2903
4
    Attorneys for Plaintiffs
5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  JASON GRAY, on behalf        ) CASE NO.: 3:07-cv-05589 CRB
    of himself and others        )
12  similarly situated,          ) **PLAINTIFFS' INITIAL**
                                 ) **DISCLOSURES STATEMENT PURSUANT**
13                 Plaintiff,    ) **TO FED. R. CIV. P. 26(a)**
                                 )
14      v.                       )
                                 )
15  GREEN DIAMOND RESOURCE       )
    COMPANY; SIMPSON TIMBER      )
16  COMPANY; and DOES 1          )
    to 50, Inclusive,            )
17                               )
                   Defendants.   )
18  _____ )

19

20      Pursuant to Federal Rule of Civil Procedure 26(a)(1), Named

21  Plaintiff JASON GRAY ("Named Plaintiff") hereby provides Defendants

22  GREEN  DIAMOND  RESOURCE  COMPANY  and  SIMPSON  TIMBER  COMPANY

23  ("Defendants") with the following initial disclosures as to the

24  claims of the Named Plaintiff.  These disclosures are based on the

25  information reasonably available to the Named Plaintiff as of the

26  date of service of these disclosures.  Named Plaintiff reserves the

27  right to supplement these disclosures at a later time.

28

                                  1

**WITNESSES**

1.    Plaintiff JASON GRAY

2.    Other class members not yet discovered

3.    Management personnel or defendants not yet discovered.

**DOCUMENTARY AND TANGIBLE EVIDENCE**

1.    Attached are documents Bate stamped 00001 through 00043.

**CALCULATION OF DAMAGES**

1.    Plaintiff estimates that the average hourly employee missed 5-7 meal breaks per week, and earned an average hourly rate of approximately $19.00.  If there are 200 hourly employees at any given time, over a four year period, defendant would be required to pay approximately $4,000,000.00, plus §203 and 2699 penalties, plus interest, attorneys fees and costs.

Plaintiff reserves the right to amend and supplement these disclosures including her calculation of damages.

Dated: February 5, 2008          KINGSLEY & KINGSLEY, APC

                                By: _____
                                    ERIC B. KINGSLEY
                                    **Attorneys for Plaintiffs**

THIS IS MAINT/ELECT TIME SHEETS ONLY

C/O STEVE MAIWOR
08-5-07

## MAINTENANCE DEPARTMENT TIMESHEET

NAME: _____

WEEK OF: _____

Signature: _____

Date: _____

I understand that by signing below I have reviewed the time record above and acknowledge that this is an accurate record of actual time worked. I also certify that I have received appropriate meal and break periods as required by law.

| TIME IN: | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 122 SAWMILL | | | | | | | | | | | | | | | | | | | | | |
| 120 BARK/BUCK | | | | | | | | | | | | | | | | | | | | | |
| 125 SORTER | | | | | | | | | | | | | | | | | | | | | |
| 126 CHIPPER | | | | | | | | | | | | | | | | | | | | | |
| 121 BARK HOG | | | | | | | | | | | | | | | | | | | | | |
| 740 DRYING 240 | | | | | | | | | | | | | | | | | | | | | |
| 752 PLANER #2 | | | | | | | | | | | | | | | | | | | | | |
| 753 PLANER #3 | | | | | | | | | | | | | | | | | | | | | |
| 768 STRAPPERS/PAPERWRAP | | | | | | | | | | | | | | | | | | | | | |
| 735 SHIPPING | | | | | | | | | | | | | | | | | | | | | |
| 775 GENERAL PLANT | | | | | | | | | | | | | | | | | | | | | |
| CLEANUP | | | | | | | | | | | | | | | | | | | | | |
| LUNCH BREAK | | | | | | | | | | | | | | | | | | | | | |
| 2ND LUNCH BREAK (IF NEEDED) | | | | | | | | | | | | | | | | | | | | | |
| TIME OUT: | | | | | | | | | | | | | | | | | | | | | |
| TOTAL PAID HOURS | | | | | | | | | | | | | | | | | | | | | |

MON
TUE
WED
THU
FRI
SAT
SUN
TOTAL

GRAY 00001

Aug 06 07 03:48p    JProsser    668-4581    p.1

7/2/2007

# MAINTENANCE DEPARTMENT SHIFT AND LUNCH SCHEDULES

*No Break Schedules*

*No Break Schedules 08-05-07*

| | Monday | Tuesday | Wednesday | Sunday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|---|
| **Sandy** Lead millwright | | | | | John Lead millwright | Lead millwright | Lead millwright | |
| Schedule 4:30am-3:00pm | Lead millwright | Lead millwright | Lead millwright | | Schedule 5:00am-2:30pm | 5:00am-3:30pm | 5:00am-3:30pm | |
| Lunch 9:30 am | 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | | Lunch 9:30am | 9:30am | 9:30am | |
| **Tim R** millwright Plnr | 9:30 am | 9:30 am | 10:00 am | | OPEN millwright Plnr | millwright Plnr | millwright Plnr | 10:00am |
| Schedule 5:00am-3:30pm | millwright Plnr | millwright Plnr | millwright Plnr | | Schedule 5:00am-3:00pm | 5:00am-3:00pm | 5:00am-3:00pm | millwright Plnr |
| Lunch 8:30am | 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | | Lunch 9:00am | 9:00am | 9:00am | 5:00am-3:30pm |
| **Tim Hickey** millwright | 8:30am | 8:30am | 10:00am | | OPEN millwright | millwright | millwright | 10:00am |
| Schedule 5:00am-3:30pm | millwright | millwright | millwright | | Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | millwright |
| Lunch 9:00am | 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | | Lunch 8:30am | 8:30am | 8:30am | 5:00am-3:30pm |
| **Eric** millwright | 8:00am | 8:00am | 10:00am | | Jose Oiler | Oiler | Oiler | 10:00am |
| Schedule 7:00am-5:30pm | millwright | millwright | millwright | | Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | Oiler |
| Lunch 12:00pm | 7:00am-5:30pm | 7:00am-5:30pm | 7:00am-5:30pm | | Lunch 8:30am | 8:30am | 8:30am | 5:00am-3:30pm |
| **Ed** Hydraulic Mech. | 12:00pm | 12:00pm | 12:00pm | | Ed Hydraulic Mech. | Oiler | Oiler | 10:00am |
| Schedule 7:00am-3:30 pm | Hydraulic Mech. | Hydraulic Mech. | Hydraulic Mech. | | Schedule 7:00am-3:30 pm | 5:00am-3:30pm | 5:00am-3:30pm | Oiler |
| Lunch 10:30am | 7:00am-3:30 pm | 7:00am-3:30 pm | 7:00am-3:30 pm | | Lunch 10:30am | 9:30am | 9:30am | 5:00am-3:30pm |
| **Randy** Lead Machinist | 10:30am | 10:30am | 10:00 am | | Brian Machinist | Machinist | Machinist | 12:00 am |
| Schedule 5:00am-3:30pm | Lead Machinist | Lead Machinist | Lead Machinist | | Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | Oiler |
| Lunch 9:00 am | 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | | Lunch 9:30 am | 9:30 am | 9:30 am | 5:00am-3:30pm |
| **Bob M** Oiler | 9:00 am | 9:00 am | 10:00 am | | Bob Oiler | Oiler | Oiler | 12:00am |
| Schedule 5:00am-3:30pm | | | | | Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | Oiler |
| Lunch 9:30am | | | | | Lunch 9:30am | 9:30am | 9:30am | 5:00am-3:30pm |
| **OPEN** Oiler/handy | Oiler/handy | Oiler/handy | | | OPEN Oiler/handy | Oiler/handy | Oiler/handy | 10:00am |
| Schedule 9:00am-5:30pm | 9:00am-5:30pm | 9:00am-5:30pm | | | Schedule 9:00am-5:30pm | 9:00am-5:30pm | 9:00am-5:30pm | Oiler/handy |
| Lunch 1:00pm | 1:00pm | 1:00pm | | | Lunch | 1:00pm | 1:00pm | 9:00am-5:30pm |
| **Brad** Etech | Etech | Etech | Etech | | Jim Etech | Etech | Etech | 1:00pm |
| Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | | Schedule 5:00am-3:30pm | 5:00am-3:30pm | 5:00am-3:30pm | Etech |
| Lunch 9:00am | 9:00am | 9:00am | 10:00am | | Lunch 9:00pm | 9:00pm | 9:00pm | 5:00am-3:30pm |
| **Rodney** Lead millwright | Lead millwright | Lead millwright | Lead millwright | | Paul millwright | millwright | millwright | 10:00am |
| Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | | Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | millwright |
| Lunch 9:30 pm | 9:30 pm | 9:30 pm | 7:30pm | | Lunch 9:30pm | 9:30pm | 9:30pm | 2:30pm-1:00am |
| **Scott** millwright | millwright | millwright | millwright | | Steve millwright | millwright | millwright | 7:30pm |
| Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | 2:30pm-1:00am | | Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | millwright |
| Lunch 10:00pm | 10:00pm | 10:00pm | 7:30pm | | Lunch 10:00pm | 10:00pm | 10:00pm | 2:30pm-1:00am |
| **Jack** millwright | millwright | millwright | millwright | | Ely millwright | millwright | millwright | 7:30pm |
| Schedule 5:30pm-4:00am | 6:30pm-4:00am | 5:30pm-4:00am | 2:30pm-1:00am | | Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | millwright |
| Lunch 9:00pm | 9:00pm | 9:00pm | 7:30pm | | Lunch 9:00pm | 9:00pm | 9:00pm | 2:30pm-1:00am |
| **Rodney** Etech | Etech | Etech | Etech | | Jeremy Etech | Etech | Etech | 7:30pm |
| Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | 2:30pm-1:00am | | Schedule 5:30pm-4:00am | 5:30pm-4:00am | 5:30pm-4:00am | Etech |
| Lunch 8:30pm | 8:30pm | 8:30pm | 7:30pm | | Lunch 8:30pm | 8:30pm | 8:30pm | 2:30pm-1:00am |

**NOTE- ANY VARIANCE FROM THE ABOVE SCHEDULE AND OVERTIME MUST BE AUTHORIZED BY YOUR SUPERVISOR.**

GRAY 00002

C/o Steve Miller

# Earnings Statement

ADP

**GREEN DIAMOND
RESOURCE COMPANY**
1301 FIFTH AVENUE SUITE 2700
SEATTLE, WA 98101-2613

| | |
|---|---|
| Period Beginning: | 07/16/2007 |
| Period Ending: | 07/29/2007 |
| Pay Date: | 08/03/2007 |

Taxable Marital Status:
Exemptions/Allowances:
Federal:
CA:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 20.3600 | 50.00 | 1,018.00 | 18,489.30 |
| | | | | 1,205.85 |
| Overtime 1.5 | 20.3600 | 4.00 | 122.16 | 1,991.78 |
| Shift Differntl | | | 48.16 | 161.05 |
| Comp Holiday | | | | 597.80 |
| Holiday In Lieu | | | | 396.70 |
| Overtime 2.0 | | | | 396.70 |
| Safety Award | | | | 120.00 |
| Vac Payout | | | | 3,273.60 |
| **Gross Pay** | | | **$1,759.12** | 26,632.78 |

**\* Excluded from federal taxable wages**

**Deposits**
Account No.
Transit/ABA
Amount

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -73.81 | 981.35 |
| | Social Security Tax | -111.54 | 1,651.23 |
| | Medicare Tax | -26.09 | 386.18 |
| | CA State Income Tax | -14.01 | 189.10 |
| | CA SUI/SDI Tax | -10.80 | 159.80 |
| | **Other** | | |
| | Credit Un Savng | -250.00 | |
| | Uniform | -22.00 | |
| | Union Dues | -61.25 | 428.75 |
| | Safety Equip | | -100.00 |
| | Safety Reim | | 120.00 |
| | **Net Pay** | | **$1,015.84** |

©1998, 2006, ADP, Inc., All Rights Reserved.

©2003 ADP, Inc.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**GREEN DIAMOND
RESOURCE COMPANY**
1301 FIFTH AVENUE SUITE 2700
SEATTLE, WA 98101-2613

GMH
Payroll check number:
Pay date:                    08/03/2007

Pay to the
order of:
This amount:     ONE THOUSAND FIFTEEN AND 84/100 DOLLARS                    $1015.84

BANK OF AMERICA
CONTROLLED DISBURSEMENT OPS.
1850 GATEWAY BLVD.
CONCORD, CA 94520

*NOT GOOD AFTER 90 DAYS*

⑆000129750⑆ ⑈121114822⑈ 73130⑈0123⑈

Aug 06 07 01:30p     JProsser     668-4581     p.1

# WORKING AGREEMENT

by and between

SIMPSON TIMBER COMPANY - KORBEL OPERATIONS
P. O. Box 177, Korbel, CA  95550
Phone (707) 268-3000

and

INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO
WOODWORKERS DISTRICT LODGE 1
IAM Local Lodge W98
4700 Valley East Blvd., Arcata, CA  95521
Phone (707) 822-4663

June 1, 2004
through
May 31, 2008

GRAY  00004

# TABLE OF CONTENTS

PREAMBLE...................................................................................... 1

ARTICLE 1 - BARGAINING AGENCY .................................................. 1

ARTICLE 2 - FUNCTIONS OF MANAGEMENT .................................... 1

ARTICLE 3 - HIRING, SUSPENSION & DISCHARGE ........................... 1

ARTICLE 4 - EQUAL EMPLOYMENT OPPORTUNITY ......................... 3

ARTICLE 5 - UNION SECURITY .......................................................... 4

ARTICLE 6 - HOURS OF LABOR .......................................................... 5

ARTICLE 7 - REPORTING TIME / CALL TIME ..................................... 8
  Reporting Time .................................................................................. 8
  Call Time ........................................................................................... 8

ARTICLE 8 - TEMPORARY ASSIGNMENT .......................................... 8

ARTICLE 9 - TEMPORARY TRANSFER ................................................ 9

ARTICLE 10 - WAGES ........................................................................ 10

ARTICLE 11 – NEW TECHNOLOGY ................................................... 11

ARTICLE 12 - JURY DUTY ................................................................. 12

ARTICLE 13 - SENIORITY .................................................................. 13
  Application ...................................................................................... 13
  Daily Overtime Assignment – Plant ................................................ 16
  Double Back Procedure .................................................................. 17
  Weekend Overtime Assignment - Plant .......................................... 18
  Weekend Overtime Assignment - Maintenance .............................. 20
  Leave of Absence ............................................................................ 21
  Reclassification - Plant ................................................................... 23
  Curtailment - Plant ......................................................................... 25
  Temporary Curtailment Procedure ................................................ 27
  Recall .............................................................................................. 28

ARTICLE 14 - RELIEF SUPERVISORS ................................................ 29

ARTICLE 15 - GRIEVANCE ADJUSTMENTS ...................................... 30
  First Step ......................................................................................... 30
  Second Step ..................................................................................... 31
  Third Step ........................................................................................ 31
  Arbitration ...................................................................................... 32

ARTICLE 16 - EMPLOYEE RESPONSIBILITY ..................................... 33

ARTICLE 17 - HOLIDAYS .................................................................. 34

ARTICLE 18 – BEREAVEMENT LEAVE .............................................. 37

ARTICLE 19 - VACATION .................................................................. 38

GRAY 00005

S ........................................................
BLE HOURS .................................................. 38
CREDIT YEARS ............................................... 38
TIME OFF ................................................... 39
BENEFITS FOR EMPLOYEES ON THE PAYROLL MAY 31 ............... 40
BENEFIT FOR EMPLOYEES TERMINATING PRIOR TO MAY 31 ......... 40
BENEFIT FOR RETURNING EMPLOYEES ........................... 41
ATE OF PAY ................................................ 42
ETHOD OF VACATION PAYMENT ................................. 42
CHEDULING - PLANT ......................................... 43
TION OF BENEFITS .......................................... 44
........................................................... 45
20 - HEALTH AND WELFARE ................................... 46
ARTICIPATION .............................................. 46
ONS TO THE TRUST .......................................... 46
11 - PENSIONS ............................................. 47
12 - SAFETY PROGRAM ....................................... 48
13 - PERMANENT PLANT CLOSURES ............................. 49
14 - STRIKES AND LOCKOUTS ................................. 50
15 - REVISION AND TERMINATION ............................. 51
16 - NOTICE ............................................... 52
17 - LEGAL STATUS ......................................... 52
IDUM OF AGREEMENTS ........................................ 54
M "A" - KORBEL WAGE RATES ................................. 71

## PREAMBLE

This Agreement, effective as of June 1, 2004, is between Simpson Timber Company and Woodworkers Local Lodge W98 (Union).

## TERMS OF RENEWAL AND EXTENSION

The bargaining Agreements between the parties in effect May 31, 2004, shall be renewed and extended, as modified by this Settlement Agreement, for a four (4) year period from June 1, 2004, through May 31, 2008.

## ARTICLE 1 - BARGAINING AGENCY

1.01 Simpson recognizes the Union as the sole collective bargaining agency for all Simpson employees including temporary and part time employees at its Korbel, California mill manufacturing operations excluding clerical employees, guards, professional employees and supervisory employees, as defined by the National Labor Relations Act, as amended, and employees in the job of shipping clerk, supply store helper and check and control scalers.

## ARTICLE 2 - FUNCTIONS OF MANAGEMENT

2.01 It is agreed that the functions of management and direction of the work force are vested exclusively in Simpson except as modified by the specific provisions of this agreement.

## ARTICLE 3 - HIRING, SUSPENSION & DISCHARGE

3.01 The right to hire, suspend or discharge is vested in Simpson. Simpson retains the right to hire at its office, at its place of business, or through the facilities of the Union.

1

GRAY 00006



3.02 Simpson agrees to send cards to the local Union office each week of all new employees hired. These cards shall be furnished by the Union.

3.03 Simpson agrees to inform all employees of the following posted rules, violation of which constitutes grounds for immediate action by the Company:

1. Smoking in prohibited areas on Company property, except where designated.
2. Bringing intoxicants into or consuming intoxicants in the plant or on Company premises.
3. Reporting for duty under the influence of liquor.
4. Disobedience or insubordination.
5. Deliberate destruction or removal of Company or other employee's property.
6. Refusal to comply with Company rules.
7. Neglect of Duty.
8. Disorderly conduct.
9. Failure to report for work when scheduled, without a bona fide reason.
10. Violation of a safety rule prescribed by the Company, the safety committee or by state or federal codes.
11. Falsification of time, production or personnel records.
12. Failure to cooperate with Company fire protection programs.
13. Bringing illegal narcotics into or using illegal narcotics in the plant or on Company property.

3.04 Simpson agrees to warn an employee in a timely manner of negligence, inefficiency or inattention to duty, or any misconduct other than covered by the posted rules. In case of written warnings, Simpson will inform the Union, in a timely manner, of such warnings.

3.05 All the above mentioned sections shall be subject to review under the provisions of the grievance procedure upon request by the Union.

2

3.06 In the event any employee shall be suspended or discharged, both the employee and the local Union shall be notified immediately in writing the reason for such suspension or discharge, and if the employee believes there has been an injustice, and requests Union representation, the matter shall be taken up with Simpson. If the management and the Union representatives agree that the employee has been unjustly suspended or discharged, Simpson shall reinstate such employee to their former position and reimburse said employee for all time lost due to such suspension or discharge to the extent that these benefits would have accrued had there been no suspension or discharge.

3.07 If it is determined that the action taken has been too severe, they may mutually agree to some other settlement. Any case of suspension or discharge on which the Union does not register written protest with the Company within five regular working days from the time thereof shall be considered waived, and thereafter shall not be made the basis of complaint or grievance.

ARTICLE 4 - EQUAL EMPLOYMENT OPPORTUNITY

4.01 It is the policy, intent and purpose of both Simpson and the Union that there should be no discrimination as between employees with respect to compensation, terms, conditions, or privileges of employment on account of race, color, religion, sex, age, national origin, marital status, or sensory, physical or mental disability, in accordance with state and federal regulations.

4.02 Nothing herein will prevent Simpson Timber Company from fulfilling its obligations under the Americans with Disabilities Act.

3

GRAY 00007

## ARTICLE 5 - UNION SECURITY

5.01 All employees of Simpson covered by this agreement shall, as a condition of employment, after thirty days from date of employment, become and remain members of the Union to the extent of keeping paid all regular initiation fees and regular dues as set by the Union.

5.02 Whenever any employee is required by this Article to become a member of the Union, or to maintain their membership therein, fails to do so in accordance with the National Labor Relations Act, and the Union notifies Simpson thereof in writing requesting the discharge of such employee, Simpson shall, within three working days from the receipt of such notice, discharge such employee unless Simpson is advised by the Union in writing that such employee has either joined the Union or has been reinstated. This time limit may be extended by mutual agreement of both parties to this contract.

5.03 When individually authorized in writing by an employee, Simpson agrees to deduct from the pay of the employee such uniform initiation fees and monthly dues, and to remit such deductions to the Local Union once a month, together with a list of the employees showing the amount deducted from the pay of each. The Financial Secretary of the Union shall inform Simpson in writing of these charges to be deducted and any change, which may be authorized from time to time. Check-off authorization:

5.04 I hereby authorize Simpson to deduct from my pay the amount of the initiation fees and monthly dues, as specified by the Financial Secretary of the Local Union, to be remitted to the Local Union each month.

5.05 I agree that this assignment of wages shall be irrevocable for a period of one year from its date or until the expiration of the contract (whichever occurs first), and that it will be

automatically renewed and irrevocable for an additional year from each of its anniversaries or each anniversary date of the contract (whichever occurs first), unless I submit a written revocation by registered mail to Simpson within the ten days preceding the anniversary date of this authorization or the expiration date of the contract (whichever occurs first).

Date: _____    Signature: _____

## ARTICLE 6 - HOURS OF LABOR

6.01 The regular hours of labor shall consist of five consecutive eight- hour days. All time worked in excess of eight hours in any one day shall be paid for at the rate of time and one-half. The regularly scheduled workweek shall at all times commence on Monday.

6.02 It is understood that the Company may initiate 4 - 10 hour work schedules upon two weeks prior notice to the employees and the Union. If such shift schedules are made they will modify existing contract language where appropriate to cover overtime payments and benefits. For example, overtime over eight (8) hours in a day shall be changed to overtime over ten (10) hours in a day if it is decided to operate a four- (4) day, ten- (10) hour schedule. Likewise, if a holiday falls during an employee's 4 - 10 scheduled week, he/she will receive ten- (10) hours' pay. When operating only two (2) of the possible three- (3) ten- (10) hour shifts Simpson may, at their option, commence one of the shifts on Tuesday and operate it through Friday.

6.03 Days worked outside the normal workweek schedule, as well as hours worked on Sunday, shall qualify for overtime premium payment only after the employee has worked forty (40) straight time hours in the scheduled workweek.

6.04 Daily overtime will be paid only after an employee has completed his/her regular shift schedule.

5

4

GRAY 00008

6.05    Hours paid for holiday pay, jury duty, funeral leave and vacation pay and time loss due to equipment breakdown shall be considered hours worked for overtime pay qualification purposes. Union committee members' regular straight time hours lost, while participating in committee meetings with the Company, shall also be considered as hours worked for overtime pay qualification purposes.

6.06    Employees shall not be required to work hours outside their normal workday/week straight time schedule, except as provided in specific provisions of the current agreement.

6.07    Lunch periods may be adjusted provided employees are given one hour advance notice, except in cases of emergency or equipment breakdown.

6.08    Double time compensation shall be paid for work performed on the seventh consecutive day worked in any regularly scheduled workweek.

6.09    The work schedule of the maintenance department and labor/cleanup and filing team members on the graveyard shift may be arranged by Simpson on a different schedule than Monday through Friday without, however, affecting the overtime rights of maintenance workers, including overtime for the sixth and seventh day worked in their regularly scheduled workweek. Simpson agrees to inform the Union prior to any change in these work schedules. The work schedule of the maintenance department and labor/cleanup and filing team members on the graveyard shift shall consist of five consecutive days in their workweek.

6.10    The principle of the above workweek shall also apply to powerhouse and fuel house employees in departments, which normally operate seven days per week. It is to be taken into consideration that the hours and the workdays of the employees performing these functions should be flexible and adjusted for the convenience of Simpson and the employees. The same overtime provisions, insofar as the eight-hour day and forty-hour week are concerned, shall apply, and their

6.11    workweek shall be arranged so that each employee shall receive two consecutive days off each week.

This variable schedule established for a job shall not be temporarily changed for the purpose of avoiding payment of overtime as provided above. Sunday, being universally considered a day of rest, shall be observed as such and all work performed on that day shall be considered overtime as such and shall be paid for at the rate of time and one-half provided the employee has worked forty (40) straight time hours in the scheduled workweek. It is recognized that because of varying operating requirements a Sunday shift is defined as any shift in which the majority of the hours worked fall within the twenty-four hour period recognized as calendar Sunday. There shall be no duplicating or pyramiding of overtime and/or premium pay. The right to refuse calendar Sunday work (8 hours) will not apply when calendar Sunday is a regular workday in an employee's regular schedule.

6.12    An employee who is requested by Simpson to perform work prior to the start of the employee's regular shift or after the end of the employee's regular shift shall be compensated for at the rate of time and one-half only after an employee has completed his/her regular shift schedule.

6.13    A plant employee not reporting for work or calling in within one-half hour after the start of their shift shall have no right to work or pay for the first half of that shift when an employee from the opposite shift has been doubled back. In applying this paragraph Simpson will give consideration to individual circumstances regarding reasons for being late.

6.14    Plant employees will be provided the opportunity to take a fifteen-minute break during the first half shift and another fifteen-minute break during the second half shift. The scheduling of these breaks will be determined by the supervisor based upon operating conditions and production requirements.

GRAY  00009

## ARTICLE 7 - REPORTING TIME / CALL TIME

### Reporting Time

7.01  Employees reporting for work, but not put to work through no fault of their own, shall receive two hours' pay, unless notified prior to reporting that their services are not required. (NOTE: The two-hour minimum pay clause shall not be taken advantage of by Simpson to work an employee only two hours and then dismiss them).

7.02  Any employee starting a half shift shall be entitled to a minimum of two hours' pay.

7.03  These rules shall not apply if the failure to put the employee to work is due to a breakdown in which the Company does not have time to give notice as required in paragraph 7.02, above, or other reasons beyond the control of Simpson.

### Call Time

7.04  Any employee called back to work after the end of their work shift shall be guaranteed a minimum of four hours' pay at the rate of time and one-half.

## ARTICLE 8 - TEMPORARY ASSIGNMENT

8.01  Temporary assignment may be used to fill temporary vacancies lasting 10 continuous workdays (8 continuous workdays if on a 4/10 schedule) or less.

8.02  Employees may be temporarily assigned, on shift only, within the classification without regard to seniority. However, after utilizing vacation relief positions employees may be assigned across shifts for vacation relief without regard to seniority.

8.03  If there are no qualified employees available from within the classification, the temporary vacancy may be filled by any qualified employee for the remainder of the workweek.

8.04  No employee in paragraphs 8.02 and 8.03 may decline temporary assignment without the approval of the supervisor.

8.05  Should the need for temporary assignment extend into the following week, that temporary assignment will be made as follows, recognizing however, that some leeway may be required due to production needs.

8.06  An employee may decline temporary assignment and remain on their regular job so long as their regular job is working and no other employee shall displace them unless agreed upon by the employee, except in cases where production shutdown is imminent.

8.07  Such temporary assignment shall not exceed ten (10) consecutive workdays (8 continuous workdays if on a 4/10 schedule), subject to extension by mutual agreement. Temporary assignment shall be made in accordance with seniority and qualifications.

8.08  If work of a higher paid classification is temporarily required of any employee they shall receive the wage of the position to which they have been assigned, and for as long a time as they occupy that position. No employee shall be subject to censure when assigned to a higher classification for which they have not been properly trained. If any employee is temporarily shifted to any position paying a lower wage than they have been receiving, no reduction in wages shall be made.

## ARTICLE 9 - TEMPORARY TRANSFER

9.01  If an employee's job is temporarily curtailed during a shift and temporary assignment to another job is not available, the employee affected shall have the option of leaving the plant or accepting such other work Simpson may offer at the

8

9

employee's regular rate of pay. (NOTE: The Company shall not take advantage of this Article to circumvent application of temporary assignment in Article 8.)

## ARTICLE 10 - WAGES
(See Addendum "A")

10.01 Wage rates for the term of this agreement are set in accordance with the provisions of the settlement agreement entered into between the parties effective June 1, 2004, and as specified in Addendum "A" for each classification at the end of this agreement.

10.02 New employees will receive $2.00 per hour less than the contract rate during the first thirty (30) days of employment. The Company may make exceptions for skilled positions.

10.03 Effective for active employees on the payroll on the date of ratification, a bonus payment of $1,000.00 will be paid subject to appropriate payroll deductions. Probationary employees will not be eligible for this payment until they have successfully completed their probation period.

10.04 Effective June 1, 2005, a fifty-five cents ($0.55) per hour general wage increase, offset by thirty cents ($0.30/hr) to be diverted to fund Health and Welfare, shall be applied to all job classifications.

10.05 Effective June 1, 2006, a fifty-five cents ($0.55) per hour general wage increase, offset by twenty-seven and one half cents ($0.275/hr) to be diverted to fund Health and Welfare, shall be applied to all job classifications.

10.06 Effective June 1, 2007, a fifty-five cents ($0.55) per hour general wage increase, offset by twenty-seven and one half cents ($0.275/hr) to be diverted to fund Health and Welfare, shall be applied to all job classifications.

10

10.07 Rates for piecework and for employees with different compensation bases shall be increased in accordance with past practice.

10.08 Subjects related to wage adjustments will be closed until June 1, 2008, except that such closure will not bar negotiations on rates of pay on newly established classifications and/or primary functions in regard to classifications and/or primary functions where there has been a substantial change in the job content.

10.09 Shift Differential          Effective 6/01/03

| | |
|---|---|
| Swing or Second Shift | $ .54/hour |
| Graveyard or Third Shift | $ .60/hour |
| 4-10 Swing Shift | $ .56/hour |

10.10 When hours of employment constitute overtime hours under the terms of this agreement or applicable statutory provisions, employees' shall be paid for such hours at time-and-one-half as provided by subcontract or statute. In computing payment for such overtime employment, computations shall be based upon the regular rate of pay for the employees involved, including the night shift differential as provided above.

10.11 There shall be a statement of earnings furnished each employee on piecework with each paycheck. Hourly employees may request a statement when desired.

## ARTICLE 11 – New Technology

11.01 New technology is defined as new production equipment or methods of operation that will cause a layoff of employees or will require significantly different skills that are not being used in the work group.

11.02 With the intent of providing continued employment for as many of the existing senior workforce as possible, the Company agrees to meet and discuss, with the Union, the proposed changes at least thirty (30) days prior to the installation of the

11

GRAY 00011

new technology with the aim of providing notice and information regarding the impact on the existing workforce.

11.03    In the event, the technological change would result in significant changes in employee responsibility, the union and company will meet to discuss training requirements and opportunities for existing employees to qualify them to perform the work in accordance with the seniority provisions of the labor agreement.

11.04    Nothing in this article is intended to restrict management's rights to determine production processes, equipment used or products manufactured and produced.

## ARTICLE 12 - JURY DUTY

12.01    Any regular employee who is required to perform jury duty, including Grand Jury, or is required to appear under Court issued subpoena to any Federal or State Justice Court, will be entitled to reimbursement at the straight time hourly rate of the employee's regular job, including shift differential if assigned to swing or graveyard shift, for the hours necessarily lost as a result of serving on the jury or complying with court subpoena; provided, however, that such reimbursement shall not exceed eight (8) hours (ten (10) hours if on a 4/10 schedule) per day, or forty (40) hours per week, less pay received from the court. Employees will be compensated for time lost from their regular schedule. The employee will be required to furnish a signed statement from a responsible officer of the court as proof of service and pay received.

12.02    Day shift mill employees will be required to report for work if their court service ends on any day in time to permit at least four (4) hours (five (5) hours if on a 4/10 schedule) work in the balance of their regular shift. Other shift employees will not be required to report for work on any day they have performed service for more than one-half day. An employee on Graveyard shift or on any other shift that is regularly scheduled to end

12

after midnight, will have the option to take jury duty leave on the day prior to the service or on the scheduled shift immediately following the service. (Only one day of jury duty pay will be paid for each day served on jury duty, based upon the employee's option.)

12.03    Hours paid under this Article will be counted as hours worked for the purpose of computing vacation pay, health and welfare and pension credits and overtime.

12.04    The above provisions apply to employees on days they are required to report for jury duty, even though not selected to serve as jury members and subpoenaed employees on days they testify and receive payment from the court. These benefits do not apply to employees appearing in court who have been charged with a criminal offense or to any court appearance where the employee is required to give testimony in any case where Simpson is a party in the court action.

## ARTICLE 13 - SENIORITY

### Application

13.01    The parties hereto agree that the principles of seniority shall be applied, with due regard to qualifications, in all employee work activities. It is recognized that some leeway is necessary in the application of seniority. Seniority, as herein referred to, does not apply to specific pieces of equipment or machinery.

13.02    Seniority of all employees shall start with the date of their last hiring. A new employee shall be on a trial basis until the employee has been on the Company payroll for forty (40) days of scheduled work, after which time the employee's seniority shall revert to the employee's hiring date. An employee shall forfeit seniority rights in the event of voluntary termination of employment, discharge for cause, violation of leave of absence provisions or failure to return to work following a layoff, illness or injury as provided below.

13

GRAY 00012

13.03  The department a person is hired into will be his/her department until a successful permanent bid has been made to another department, unless the permanent job had been posted with no bidders - at which time his/her job would become the permanent home of record.

13.04  Seniority credits of any employee who is absent due to industrial accident, occupational disease, or leave of absence will continue to accrue for a period of three (3) years during the period the employee is not working except that employees who are on occupational disability who have completed the new hire trial period, and who enter into a rehabilitation program after ratification of this agreement, will continue to accrue seniority until they complete rehabilitation training under the State Compensation program.

13.05  Seniority credits of an employee absent due to off-the-job sickness or off-the-job accident will accrue up to two consecutive years. At reasonable intervals of not more than six months, a disabled employee must submit to Simpson a written statement from the employee's attending physician that the employee is unable to work. If such written statement is not received, and if the employee fails to return to work, a two weeks' waiting period will be allowed. If at the expiration of that period the statement is still not received, the person will cease to be an employee of Simpson. The two-year period may be extended as determined by Simpson and the Union. However, if it is determined that the employee does not have a reasonable chance of recovery the employee will cease to be an employee. If an extension is granted the same provision will apply as in the first two years; but if it develops the person cannot return to work, the employee will cease to be an employee upon the expiration of the extended period. Any employee returning to work from an illness or injury must have a medical release from the attending physician.

13.06  Seniority credits of an employee absent due to layoffs will accrue up to three consecutive years. (Also see paragraph 13.44)

14

13.07  The term "company seniority" means the total uninterrupted period in recognized Company service within the Northwestern California area, irrespective of job location or job transfer. Such seniority will apply to holiday and vacation benefits and in determining ties in plant seniority. The term "plant seniority" means the total uninterrupted service within the plant or operation set forth below. The term "department seniority" means the total uninterrupted service within a department listed below and provided for in the application of the overtime, bidding, and recall provisions of this labor agreement. The term "job seniority" means a designated position within a primary function as listed on the Wage Schedule (Addendum "A") and provided for in the application of the overtime, bidding, and recall provisions of this labor agreement, and shall be determined by department seniority.

13.08  PLANT OPERATION – Department/Teams

Korbel Sawmill - Korbel Facility
    Sawmill Team
Korbel Reman – Korbel and Samoa Facility (Kiln and related area only)
    Planer Team
    Shipping Team
Korbel Maintenance - Korbel Facility
    Maintenance Team
Korbel Filing - Korbel Facility
    Filing Team
Korbel Log Deck
    Deck Team
Korbel Equipment Maintenance - Korbel Facility
    Truck Shop Team

A seniority record shall be compiled by Simpson, listing all employees. This record shall contain the plant seniority date, in chronological order, of each employee and the current department seniority date together with the employee's job classification and primary function and is to be kept up-to-date. A listing is to be furnished the Local Union when requested. New employees shall be put on the seniority list in the order in

15

GRAY 00013

which they are hired. (Hired means the time when the employee signs the action form.)

**13.09** Except as provided in paragraphs 13.64 and 13.65, seniority shall be observed and applied first by department and next by plant. All seniority shall be determined from the employment records of Simpson.

**13.10** Department seniority is to be applied for reclassifications within a department.

**13.11** Plant seniority is to be applied for reclassifications into department vacancies, after departmental reclassifications have been made.

**13.12** Qualifications and ability, when exercising seniority rights for reclassification, means the ability to do the job but not the right or ability to learn it.

**13.13** In filling vacancies, except Laborer, Unit Wrap Laborer and Lumber Puller, Simpson agrees to reclassify employees on the basis of seniority, qualifications and ability. No new employee will be hired to fill such vacancies unless there is no present employee qualified to fill such vacancy.

**13.14** For any vacancy remaining after due reclassifications have been made, if Simpson and the Union determine that an employee may be trained for this position, with due consideration to seniority and qualifications, the senior qualified employee, shall be given the opportunity for this training.

**Daily Overtime Assignment**

**13.15** Daily overtime will be assigned first to:
1. The employee working in the primary function on shift and if not available, then to,
2. The senior qualified person within the classification on the shift, if not available, then to,

16

3. The senior qualified person on the team on the shift, if not available, then to,
4. The senior qualified person within the department on shift, if not available, then to,
5. The senior qualified person outside the department within the facility on shift.

**13.16** If no qualified, on shift, personnel are available, off shift personnel shall be used if the job is to be filled. These employees will be offered the assignment in order of Paragraph 13.15 (2, 3, and 4 above).

**13.17** Because of the importance of maintenance employees to the success of the operation, employees working in those classifications may be required to work for one hour longer than their regular daily schedule, to finish breakdown assignments, started prior to shift ending.

**13.18** Employees requested by the Company to temporarily fill in on a specific job other than their regular job shall not be censured from daily overtime they normally would have worked. This paragraph takes precedence over paragraph 13.19(below).

**13.19** An employee assigned to fill in on a specific job shall have no right to daily overtime work unless that employee has worked eight hours on the job during the day.

**Double Back Procedure**

**13.20** In the event temporary vacancies cannot be filled from within the shift, and employees are requested to double back from the opposite shift, the initial vacancy shall be filled as follows:
1. The senior qualified employee in the same primary function, if not available, then to,
2. The senior qualified employee on the team, if not available, then to,
3. The senior qualified department employee.

17

GRAY 00014

13.30 The overtime posting notices will be removed after the day shift lunch period on Friday (8 hour shifts) and Thursday (10 hours shifts). The posted overtime will be filled from among employees who have signed the posting in the following priority:

1. The employee in the primary function on the shift, then to;
2. The senior employee in the primary function from the opposite shift (see SENIORITY, Paragraph E, Double Back, 13.25, first sentence) then to;
3. The senior qualified team member on the shift, then to;
4. The senior qualified team member from the opposite shift, then to;
5. The senior qualified Department employee, then to;
6 The senior qualified Plant employee.

13.31 In the event that additional weekend overtime work requirements become necessary at any time after Wednesday lunch period on each respective shift, the employee who is regularly working this job during the week shall be given the first call for such overtime. If this employee declines the overtime work then the senior qualified employee within the primary function on the shift required, shall be given this opportunity. If the overtime job cannot be filled as above, the supervisor shall assign work to:

1. A senior qualified employee within the same primary function regardless of shift if available (except that no employee shall work more than one consecutive double shift within forty-eight consecutive hours), or
2. A senior qualified employee in the classification regardless of shift, or
3. A senior qualified team member regardless of shift.

13.32 Employees assigned such overtime shall be notified by the end of their shift on Thursday day and Friday swing (10 hours shift) and Friday (8 hour shift).

19

13.21 No employee shall work more than one consecutive double shift within forty-eight consecutive hours.

13.22 When operating 3 crews in a work center, a vacancy on a shift will be filled as follows:

13.23 Senior qualified employee in the primary function (exact job) from the team that is on its scheduled day off.

13.24 Temporary assignment to any qualified team member.

13.25 Repeat 13.23 and 13.24 to fill any vacancy that occurs because of the above procedure.

13.26 As a last resort, double back from the opposite shift working that day using 13.23 and 13.24, above. Safety will always be considered when scheduling overtime.

**Weekend Overtime Assignment (Excludes Maintenance)**

13.27 When weekend overtime work is required (Friday, Saturday and Sunday) is weekend overtime of the Monday through Thursday crew; (Saturday, Sunday and Monday) is weekend overtime for the Tuesday through Friday crew) on a specific job, these jobs will be posted. Postings will be made as early in the week as possible but no later than Wednesday noon on the Day Shift. Employees will have until noon on Thursday day shift to sign overtime posting.

13.28 Plant employees requested by the Company to temporarily fill in on a specific job, other than their regular job, shall not be censured from weekend overtime they normally would have worked under the preceding paragraph. This rule shall take precedence over paragraph 13.29 (below).

13.29 An employee assigned to fill in on a specific job shall have no right to weekend overtime unless that person has been working on that job for five consecutive days (four consecutive days on a 4/10 shift).

18

GRAY 00015

13.33 Every effort will be made to place employees in the positions for which they signed up, however the supervisor reserves the right to make adjustments to ensure the overtime shift occurs.

13.34 The following procedure will be used for working Sunday overtime on the #3 Planer with a three-(3) shift configuration:

1. All production jobs that will operate on Sunday overtime for Planer #3 will be posted by Friday noon the week prior (8 calendar days prior to operation) if at all possible but no later than Monday noon (5 calendar days prior to operation).

2. Every effort will be made to post by Friday noon, however, in those situations where the need for overtime is unknown by Friday noon it will be posted by Monday noon.

3. All job postings will be taken down on Thursday noon. The jobs will be awarded to the senior qualified employee in each primary function followed by the weekend overtime assignment language from the list of employees that have signed up.

4. When posting by Friday noon, it will give each crew at least 3 shifts to sign up for Sunday overtime.

**Weekend Overtime Assignment - Maintenance**

13.35 A weekly sign up sheet will be posted prior to 12 noon each Monday. This sign up sheet will be for weekend maintenance assignments.

13.36 It is the responsibility of each individual hourly maintenance employee who wishes to work the weekend overtime to sign up prior to Thursday noon.

13.37 Maintenance employees that will be provided weekend work, on the days and shift for which they have sign up, will be notified prior to the end of their regular straight time shift for that week.

13.38 Following is the weekend overtime opportunities for the maintenance department:

| CREW # | FRI 3:30 a.m. | FRI 1st | SAT 3:30 a.m. | SAT 1st | SAT 2nd | SUN 3:30 a.m. | SUN 1st | SUN 2nd | MON 2nd |
|---|---|---|---|---|---|---|---|---|---|
| Crew 1 Mon.-Thurs | | X | | X | | | X | | |
| Crew 2 Tues-Fri | X* | | X* | | X | X* | | X | |
| Crew 3 Fri.-Mon (N) | X* | | | | | | | X | X |

* Sign up for maintenance overtime work prior to shift.

13.39 Deviations in straight-time work schedules will result in deviations in weekend overtime.

13.40 Emergency Call in Procedure (agreed to on June 28, 1996):

1. Before 12 noon, the senior people in the classification needed will be called from the third maintenance crew.

2. After 12 noon, the senior people in the classification needed will be called from all maintenance crews that aren't working.

3. When an emergency call in procedure is necessary after the end of the day shift, the senior people in the classification needed will be called from the third maintenance crew.

13.41 In the event of overtime cutbacks, senior people will be called back irrespective of crew. The senior qualified maintenance department employee in the classification needed will be given first right to an emergency call in.

13.42 The company representative is required to make one telephone call to the most senior man on the list before calling the next senior employee.

**Leave of Absence**

13.43 Any employee elected or appointed to permanent international, district, or local union office necessitating a leave of absence shall be granted said leave by Simpson, provided sufficient

GRAY 00016

job, shall relinquish all rights to recall to the job that was held on a temporary basis. Employees that are reinstated to their former positions, under this paragraph, will be granted seniority in those positions as if the employee had never left.

13.48 Employees bidding permanent jobs under the conditions outlined above shall accrue seniority rights as in the case of any permanent bid. In additions, an employee who successfully bids from a temporary job to a permanent job, created by an employee being on leave in excess of one year, shall have seniority rights established on the date the temporary job was awarded.

13.49 Any employee who enters the armed services of the United States government shall retain all seniority rights and privileges as an employee of Simpson in accordance with the federal laws pertaining to re-employment of veterans.

Reclassification

13.50 Permanent job openings shall be posted for bid when the opening occurs or new jobs occur. The job will be posted throughout the operation for a five-(5) day period. The job will be awarded to the senior qualified bidding permanent team member, based on department seniority at the end of 48 hours from among the employees who have bid the posting at that time. Permanent team members, who are senior to curtailed team members, who have temporarily bid to jobs on other teams, will be considered. The posting will state the job's primary function, rate of pay and basic duties. In the event no qualified team member bids the job, it shall be awarded to the senior qualified department employee, then to the senior qualified facility employee.

13.51 There shall be no limitations on upward bidding. There shall be no bidding from a temporary job to another temporary job. If there is a job that is non-permanent in nature, any employee shall have the right to bid and exercise their seniority rights.

23

advance notice is given so that the employee's work can be properly cared for, and further, provided that such leave of absence shall be for one term of office or thirty six months, whichever is less.

Leave of absence extensions for current and future employees selected to full time positions with the IAM will be granted upon request. The company will not be required to grant leave of absence to more than two employees working under the same labor agreement at any given time.

13.44 Any employee absent pursuant to such leave of absence, shall continue to accrue seniority. All such leaves of absence shall be applied for in writing and the reason for the request given in such written application and granting of such leaves by Simpson shall be in written form and copies shall be filed with the Union and Simpson. Such leave of absence may be extended by mutual agreement.

13.45 Simpson may grant an employee a leave of absence in written form for good cause, not to exceed 120 calendar days, without prejudice to seniority rights. Employment elsewhere or self-employment during such leave shall automatically cancel seniority rights.

13.46 All such leaves of absence shall be conditioned upon giving of sufficient notice to make arrangements for handling the work of the employee receiving the leave. Any leave of absence may be extended by mutual agreement.

13.47 After 30 days of a leave of absence, or disability, the job of the absent employee shall be bid on a temporary basis. After the duration of the absence exceeds one (1) year, the job shall be bid on a permanent basis. Should the absent employee return to work after the one-year period, the employee would return to the specific job held prior to the absence. Employees who bid jobs as a result of the initial vacancy created by the absent employee shall also be returned to their specific job held prior to bidding. An employee displaced from a permanent bid, under this paragraph, that goes back to his last permanent bid

22

13.52  Qualified employees shall submit their bid to the shop steward. Employees on leave of absence or vacation may bid a job when posted and, if selected, shall fill the job when they return.

13.53  In cases where a single employee bids on more than one job of equal pay and the jobs are scheduled to be awarded simultaneously, unless the employee specifies preferences on the bid sheet, the jobs will be awarded by management based on operating requirements.

13.54  A shop steward shall submit all bids to a supervisor by the end of the bidding period. A supervisor shall award the job as specified by the agreement.

13.55  The Company is not obligated to select any employee not fully qualified.

13.56  The trial period for employees deemed fully qualified receiving bid awards will be the current maximum of 15 workdays. Employees receiving bid awards who aren't fully qualified may have their trial period extended for up to 30 workdays during which time the employee may be disqualified pursuant to Paragraph 13.55 (above). Employees who have their qualification extended will be notified of the reason(s) for such extension. Employees will be able to disqualify themselves during the first five workdays of the qualifying trial period after a bid award. "Fully qualified" is as defined in Paragraph 13.12 (above).

13.57  This procedure will continue in order of seniority through the first six×(6) bidders until a bidder demonstrates the ability to do the job. If the job is not successfully filled after the first posting, the job will be filled by Simpson. If the qualified successful bidder cannot assume the job for a period in excess of 30 days the 2nd through 6th bidder will be given the option to assume the job temporarily.

13.58.  No new employees will be hired to fill such vacancy unless there is no employee qualified to fill such vacancy.

24

13.59  On new primary functions, the Company shall bid these jobs only after negotiations are concluded. Temporary assignment will be used to fill the jobs until negotiations are concluded and the vacancies have been successfully bid.

13.60  When an employee returns from absence to their last permanent job, employees displaced by the return shall be reinstated to their last permanent job (i.e. ladder procedure).

13.61  Appointments made by Simpson to fill a vacancy shall in no way create any rights to that job.

Curtailment

13.62  In the event of a curtailment involving layoffs of not over five working days, employees holding jobs affected by the curtailment shall be placed on layoff status regardless of their seniority.

13.63  Upon employee's return to work, any employees who request a statement of reduced earnings for the preceding week will be issued a statement by the Company.

13.64  In the event that a continuous curtailment extends beyond five workdays, employees affected by the curtailment shall bump to other positions as follows, on the first Monday following the fifth workday of curtailment:

1.  Begin with the senior employee being curtailed from the team and bump the junior employee in the primary function regardless of shift. Continue this procedure until all employees with enough seniority to continue working will have had the opportunity to secure a job in their primary function based on their team seniority.

2.  Layoff the number of junior PLANT employees equal to the number being curtailed from the team.

3.  Qualified employees shall use their department seniority to remain on the team.

25

GRAY 00018

13.65  Begin with senior person who can not bump in their primary function and :

1. Bump to the highest paid vacancy on their shift that for which they are qualified (their shift is defined as "their permanent home of record"), then;

2. Bump to the highest paid vacancy on the opposite shift for which they are qualified. When a 3rd crew is being curtailed, day shift will be considered the preferred shift.

3. If more than one team is to be affected by the original curtailment, all team adjustments will be made per the above language.

4. Curtail junior people in the department equal to the number of people left who can not bump within their team and bump to the highest paid vacancy in the department for which they are qualified. When an employees' lack of department seniority results in a vacancy, that vacancy will be treated as a department vacancy regardless of where the actual vacancy occurs. Senior curtailed department employees will access that vacancy during department adjustment.

5. If a curtailed employee cannot fill a department vacancy under paragraph 4, above, because of a lack of qualifications, then the employee, in seniority order, may be allowed to bump the most junior employee in the department that holds a job that the employee is qualified to perform, provided that they have senior department seniority.

6. Curtail junior people in the plant equal to the number of people left who can not bump within their department and bump to the highest paid vacancy in the facility for which they are qualified.

7. The following listed employees, in order of seniority, will have a plant seniority date of 1/28/85 for all purposes under the labor agreement:

a. Gary W. Huddleston
b. Jose A. Sanchez
c. Norman L. Foust

26

d. Dick Simon
e. Betty J. Brennen
f. Job A. Gomes

8. In the event an employee curtailed from their regular job cannot perform the duties and responsibilities of the job to which curtailed, due to physical inabilities, said employee shall accept layoff, and shall be recalled in accordance with Article 13 (recall language) of this Agreement.

9. After all jobs are assigned using the above procedure, the remaining vacancies will be filled using recall language.

10. Employees that have not secured a position during the above procedure will have the opportunity to bump junior plant employees provided the senior employee has the qualifications to do the job. A senior employee not qualified to bump the junior employee will continue up from the bottom of the seniority list until they are placed in a job in which their qualifications and seniority will allow them to perform.

**Temporary Curtailment Procedure**

In cases of temporary curtailment, the following procedure shall apply:

13.66

1. When a temporary curtailment occurs involving a portion of the jobs in one or more departments each employee whose job is directly affected shall, on the basis of their department seniority:

   (a) accept layoff, or
   (b) bump the junior employee in their job classification and department.

2. Each employee bumped in accordance with paragraph 13.66 (1, above), shall, on the basis of their department seniority:

   (a) accept layoff, or

27

GRAY 00019

(b) bump the junior employee in their department.

3. Junior department employees laid off as a result of a temporary curtailment shall not bump into another department during the period of temporary curtailment.

4. In case of a temporary curtailment involving all employees within a department, these employees shall not displace other employees during the temporary period.

**Recall**

13.67 Before recalling curtailed employees, permanent vacancies or new jobs will be posted and bid.

13.68 Employees will be recalled to fill vacancies in the following sequence:

1. Recall senior employee to his/her PERMANENT BID JOB;
2. Recall senior employee to his/her PRIMARY FUNCTION;
3. Recall senior employee to his/her TEAM;
4. Recall senior employee to his/her DEPARTMENT;
5. Recall senior employee to the FACILITY
6. All jobs not filled under the Recall language above will be bid as per reclassification language, paragraphs 13.51 through 13.61.

13.69 In the event of a general curtailment, the Union shall be advised by Simpson, prior to layoff and a list of employees laid off will be available to the Union.

13.70 An employee who fails to return to work within seven calendar days after receipt of notice by registered mail or return of undelivered letter which has been sent to their last address shown in Simpson records and notification has been given to the local Union will lose their seniority, provided, however, that

- 28

13.71 this time limit may be extended by Simpson but shall not exceed fifteen calendar days from date of first notice.

If at any time an employee feels discriminated against, by Simpson or the Union, in recorded seniority, layoffs, curtailment, recalls or in regards to reclassification, they have a right to take their case before the grievance committee as in the case of any grievance.

**ARTICLE 14 - RELIEF SUPERVISORS**

14.01 It is understood that bargaining unit employees will be used as relief supervisors, temporary supervisors and supervisor trainees only to direct the work force in the performance of their duties.

14.02 It is understood that bargaining unit employees will not have authority to discharge or discipline employees while acting as supervisors. Any discipline imposed on bargaining unit employees will be done by regular members of management. Relief supervisors, temporary supervisors and supervisor trainees will be instructed that should there be any performance problems with members of their crew the problem will be reported to the appropriate management person, who will evaluate the situation and decide whatever corrective action is necessary. If disciplinary action is contemplated no bargaining unit relief supervisor will be asked or required to recommend any form of disciplinary action against another bargaining unit employee.

14.03 It is understood that regular management personnel are responsible for determining whether discipline is appropriate and communication of disciplinary action to all concerned.

14.04 Any individual may work as a relief supervisor for up to 18 months unless the parties mutually agree to extend the assignment. The union will not withhold approval for an extension without good reason.

29

## ARTICLE 15 - GRIEVANCE ADJUSTMENTS (P-5)

15.01  Simpson agrees to recognize and deal with a committee, not to exceed seven members or less than three members, to be known as the Plant Committee. The Union Committee will have the assistance of an IAM District 1 representative at step 3 of this procedure.

15.02  A grievance is a dispute concerning the interpretation or operation of this agreement raised by an employee or the union on behalf of the employee. A written grievance must specify the agreement provisions alleged to be violated, the nature of the violation, the specific dates violation occurred, and also the particular corrective action requested by the grievant.

15.03  Any grievance (including discharge grievances) in order to be considered must be presented within five (5) working days of the date the alleged violations occurred.

15.04  Any individual employee or group of employees shall have the right to present a grievance to the company, and to have the grievance adjusted without the assistance of the union, as long as the adjustment and the settlement is provided to the union by the company. All grievances are to be handled in the manner outlined in the Article and in accordance with time limits of this Article.

15.05  Before proceeding with a formal presentation of the grievance, it may be presented verbally to the employee's foreman. If the grievance is not settled in the course of such discussion and if it is to be carried out further, then it will become a formal grievance, which must be reduced to writing.

### First Step

15.06  The grievance shall be presented to the foreman in writing within not more than five (5) working days from the date of such verbal discussion referred to above. The foreman shall give his/her written answer with three (3) working days after the

30

written grievance is presented to him/her. The grievance will be considered withdrawn at this point unless submitted to the second step within the required time limits. If there is no response from the company within the required time limits, the grievance will automatically be advanced to the second step.

### Second Step

15.07  The parties agree that a regular second-step grievance meeting will be held at 1:00 p.m. on every other Wednesday to consider any unresolved first step grievances.

15.08  If a satisfactory settlement is not reached in the First step, then it may be referred to the second step, provided it is so referred to the company plant committee within five (5) working days after receipt of the foreman's answer in the first step. However, any first step grievance that's not referred to the second step within two (2) days prior to the next regularly scheduled second step meeting won't be considered until the next following second step meeting unless mutually agreed otherwise. The union plant committee and the company plant committee will meet to discuss the grievance as noted above. If the grievance can't be resolved the company representative will verbalize the company position before adjourning. If, however, tentative settlement of a grievance is reached the company will confirm that tentative agreement in writing within seven (7) calendar days.

15.09  The grievance will be considered withdrawn at this point unless submitted to Step 3 in writing within seven (7) calendar days following the second step meeting or union's receipt of the written tentative agreement, whichever is applicable.

### Third Step

15.10  If no settlement is reached in step two, the plant committee and a district representative and a company representative will meet within thirty (30) calendar days after receipt of the union's referral to endeavor to settle the grievance. The company will submit its decision in writing within fifteen (15) calendar days of this meeting.

31

GRAY 00021

15.11 The grievance will be considered withdrawn at this point unless submitted to arbitration within the required time limits.

15.12 In Steps 2 & 3, grievance meetings will be conducted by the union and company representatives without the grievants or employees involved, being present, unless the grievance is being processed without union involvement.

15.13 The parties agree that all time limits referred to in this article may be changed or extended by mutual agreement between the local union and the company.

15.14 Following the 3rd step of the grievance procedure, the parties, by mutual agreement, may request that a mediator from FMCS be requested to meet with the parties in an attempt to resolve the issue. The mediator assigned shall have 30 days to assist the parties to a resolution. The Mediator shall have the authority to recommend options for settlement of the issue, but no recommendation will be final and binding unless the settlement is agreeable to all of the parties. If no settlement is reached within the 30-day period, the union may request the grievance proceed to arbitration as long as the request to arbitrate is made within 45 days following the mediation conclusion.

**Arbitration**

15.15 If a complaint is not resolved in the above procedure, the union may submit the matter to arbitration, by written notice to the company. Such notice of appeal to arbitration must be received within forty-five (45) days after the company's answer in Step 3 of the grievance procedure.

15.16 The moving party shall apply to the FMCS for a list of 11 potential arbitrators who are members of the American Academy of arbitrators and are located on the West Coast. The parties may mutually agree on a member of the list or alternately strike names until there is one name remaining who shall be the arbitrator. The striking of the first name shall be decided by a flip of a coin.

32

15.17 In all matters submitted to arbitration, each party to said arbitration shall bear the entire cost and expense of its own witnesses and representatives. The expenses of the arbitrator and all other expenses of the arbitration other than those incurred by each party in the presentation of its own case shall be borne equally by the parties involved. The decision of the arbitrator, rendered in accordance with this agreement, shall be final and binding on the parties concerned, however, the arbitrator shall have no authority to modify this agreement, whether by adding to or subtracting from the terms of this agreement. Provided, however, the arbitrator may not find that the union or the employer violated this agreement if the action of the union or employer was required, by law, to be done, this provision includes, but is not limited to, any settlement agreement made with any governmental agency, to resolve allegations of alleged employment discrimination. Proof of any issue of act before the arbitrator shall be decided on the basis of the preponderance of the evidence.

15.18 The rights and duties to request/demand arbitration under this section shall apply only to matters occurring or arising out of this agreement and prior to termination of this agreement. A dispute, which is based, in whole or in part, on events that occur prior to or after termination of this agreement is not subject to the arbitration provisions.

**ARTICLE 16 - EMPLOYEE RESPONSIBILITY**

16.01 Employees in team jobs are expected to perform to the level of their capability and may rotate from task to task within the team for purposes of training, relief or temporary assignment, keeping in mind the objectives of safety and productivity.

16.02 When skills of a maintenance employee are required, production employees will assist the maintenance employee to the extent possible.

33

GRAY 00022

16.03    Operating employees shall perform minor maintenance and oiling and assist maintenance employees as necessary.

16.04    All employees may be requested to fill in on cleanup and/or relief in order to maintain safety and productivity.

## ARTICLE 17 - HOLIDAYS

17.01    The following holidays shall be observed:  New Year's Day, beginning at five p.m. December 31 and ending January 1 at midnight; Memorial Day; Independence Day; Labor Day; Thanksgiving Day; day after Thanksgiving; December 24, beginning at 12:01 A.M. on December 24 and the last regularly scheduled shift commencing prior thereto shall be completed at non-holiday rates of pay; Christmas Day, beginning at five p.m. December 24 and ending December 25 at midnight and December 31. Plus two (2) floating holidays.

17.02    The two-(2) floating holidays are designated as individual floating holidays. All work performed on these days shall be paid for at the rate of time-and one half.

17.03    It shall be the employees' responsibility to give the Supervisor adequate advance notice of taking floating holidays. Employees must receive approval prior to taking the requested floating holiday.

17.04    Management will approve floating holiday requests subject to the plants operational needs. Eligible employees may receive pay in-lieu of time off for their floating holiday(s) if they make written application.

17.05    The Company will not schedule fixed floating holidays during weeks when the Company has scheduled a vacation shutdown.

Memorial Day, Independence Day, Labor Day, Thanksgiving Day, day after Thanksgiving, December 24, Christmas Day, December 31, and New Year's Day shall be recognized as paid holidays for qualified employees.  Paid holidays recognized by

34

this agreement shall be observed on the day established by Congress for federal employees.

17.06    If a holiday falls on Sunday, the following Monday shall be recognized as the holiday.  However, the December 24 and 31 holidays shall be recognized on the day they occur without regard to Sunday.

17.07    Holiday pay shall be computed on the basis of the employee's regular straight time hourly rate, including shift differential, in effect at the time of the paid holiday.

17.08    Holiday pay for a qualified pieceworker shall be one rate for all holidays, and that rate shall be the employee's vacation rate as set forth in the Vacation Article of this Agreement, but not to exceed eight-(8) hours' pay.  For a qualified pieceworker not having a vacation rate, holiday pay shall be eight (8) hours' pay computed by averaging the straight time hourly piece rate earnings of the individual employee for each hour worked at piece rate during the ninety (90) day period preceding the holiday. Any applicable shift differential for employees regularly assigned to a swing or graveyard shift shall be added to this piece rate computation.

17.09    Qualified employees working on a paid holiday shall be paid an additional one and one half times the employee's regular rate of pay. Employees who work on a scheduled holiday shall be permitted to take a day off without .paying the 90 consecutive days immediately following the scheduled holiday. Scheduling the day off will be by mutual agreement between the employee and management.

When a holiday falls within a week the Company has scheduled for vacation, employees will be permitted to take a day off during a 120 day period after the holiday.  Pay for the holiday will continue as is currently provided and the day off will be without pay.  Scheduling the day off will be by mutual agreement so as not to disrupt operations.

35

**17.10** Employees working other than an 8-hour straight timework schedule will have their holiday pay based upon straight time hours lost from a regularly scheduled workday at the time the holiday occurs.

**17.11** An employee is qualified for holiday pay if he/she has at least ninety (90) days' seniority prior to the holiday. Each employee, to qualify, must work his or her last regularly scheduled workday before the paid holiday unless excused in writing by Simpson.

**17.12** Day before paid holiday work requirements shall be inapplicable to absences pursuant to written leaves of absence for a period not to exceed thirty calendar days or for temporary military leave of absence of thirty calendar days or less. Day before paid holiday work requirements shall be inapplicable in the event an employee is excused from reporting by the supervisor, verbally if for three workdays or less, otherwise in writing. An employee retiring under the provisions of the Simpson - I.A.M. Pension Plan shall receive holiday pay for all holidays, which occur during the month in which the employee retires, provided the employee worked the last scheduled workday before the holiday(s). No payment will be made for any holiday that occurs in any month after an employee's retirement date.

**17.13** In the event a paid holiday occurs during a period of layoff (not to exceed 120 calendar days) an otherwise eligible employee who returns to work within the time prescribed for return upon recall shall be treated as having satisfied holiday pay eligibility requirements. This provision also applies to employees who are laid off during a vacation shutdown for which they do not qualify under Article 19, Vacations.

**17.14** An employee otherwise qualified who is absent because of an industrial accident or illness for which they are receiving workers' compensation shall be qualified for holiday pay for the paid holidays which occur during the first six months of absence following the date of the accident resulting in such absence.

36

**17.15** Accrued holiday pay for the employee who is qualified because of an industrial accident, as defined in paragraph 17.14 (above), shall be paid on the regular payday for the period in which he returns to work.

**17.16** An employee otherwise qualified who is absent because of a non-occupational injury or illness shall be qualified for holiday pay for the paid holidays which occur during the first thirty calendar days of absence following the commencement of the non-occupational injury or illness resulting in such absence. Accrued holiday pay for the employee who is qualified because of a non-occupational injury or illness shall be paid on the regular payday for the period in which he returns to work.

**17.17** Employees on leave of absence for Union business shall have thirty calendar days leave without disqualifying them for holiday pay if they are otherwise eligible.

**17.18** An otherwise qualified employee shall receive holiday pay for all holidays, which occur within thirty days following a permanent plant closure.

## ARTICLE 18 – BEREAVEMENT LEAVE

**18.01** When death occurs to a member of an employee's immediate family, the employee shall be granted necessary time off. Said employee will be compensated at his/her regular straight time hourly rate for hours lost from their regular schedule for up to three consecutive days exclusive of days of rest, subject to the following limitations:

**18.02** Such paid time off must be taken between the date of death and two working days following the date of the funeral.

**18.03** Members of an employee's immediate family are limited to the employee's spouse, sons, daughters, mother, father, brothers, sisters, step parents, step children, grandfather, grandmother,

37

GRAY 00024

18.04    grandchildren, great grandchildren, mother in law and father in law.

Proof of relationship and/or death, and/or date of the funeral may be required. Bereavement leave pay will not be granted for any day on which the employee is not scheduled to work.

18.05    Compensable hours under the terms of this article will be counted as hours worked for computing vacation pay, holiday pay, weekly overtime, and health and welfare and pension contribution or eligibility.

## ARTICLE 19 - VACATION

### Definitions

19.01    Each employee shall be granted Vacation Benefits subject to the provisions of this Article.

19.02    Vacation Base Year - a twelve month period commencing on June 1 and ending on the following May 31.

19.03    Vacation Benefits - that amount of Vacation Time Off and Vacation Pay for which an employee qualifies, based upon Vacation Credit Years and compensable hours accumulated during the preceding Vacation Base Year. Vacation Benefits shall be established as of May 31 of each Vacation Base Year and shall be applied during the following Vacation Base Year, except as modified in paragraphs 19.16 through 19.19 (below) (Vacation Benefits For Employees Terminating Prior to May 31).

### Compensable Hours

19.04    All hours worked during the Vacation Base Year, plus Holiday, Jury Duty, Funeral Leave, Call Time and Vacation Pay hours.

19.05    Employees will accrue hours toward annual vacation qualification when on compensable industrial illness or injury for a period of 24 months.

19.06    Continuous Employment - employment with the Employer and its predecessors uninterrupted by voluntary termination by the employee, retirement or discharge unless a discharged employee is reinstated within 30 days.

### Vacation Credit Years

19.07    Each employee shall receive one year of Vacation Credit for each full year of continuous employment commencing on June 1 and ending on the next following May 31, both dates inclusive.

19.08    Any employee hired after June 1 of any year who remains in the continuous employ of the Employer through the following May 31 and has at least 90 days service shall be credited with one year of Vacation Credit.

GRAY 00025



**Vacation Time Off**

19.09  One week - seven consecutive days commencing on the first day of the employee's regular scheduled workweek unless otherwise agreed to by the Union and Employer.

19.10  Two weeks - fourteen consecutive days except that it may be two non-consecutive weeks of seven consecutive days each if agreed to by the Union and Employer.

19.11  Third, fourth, and fifth weeks - seven consecutive days each as provided in paragraph 19.09, above.

19.12  Vacation Pay - the hours of pay to which an employee is entitled during Vacation Time Off as defined in paragraphs 19.09 through 19.11, above.

**Vacation Benefits for Employees on the Payroll May 31**

19.13  An employee in the employ of the Employer on the May 31 that concludes a Vacation Base Year and who has 1,200 or more compensable hours during that Base Year shall receive Vacation Time Off and Vacation Pay in accordance with the table below.

19.14  Effective June 1, 2001:

| VACATION CREDIT YEARS | VACATION TIME OFF | VACATION PAY |
|---|---|---|
| 1 through 2 | 1 week | 40 hours |
| 3 through 5 | 2 weeks | 80 hours |
| 6 through 11 | 3 weeks | 120 hours |
| 12 through 19 | 4 weeks | 160 hours |
| 20 or more | 5 weeks | 200 hours + 40 hrs bonus week |

40

19.15  An employee in the employ of the Employer on such May 31 who has 640 or more, but less than 1,200 compensable hours in the Vacation Base Year shall receive Vacation Benefit in accordance with the table above, except that the total Vacation Pay will be reduced by the amount shown below, applied to the first vacation payment.

| Compensable Hours | Vacation Pay Reduced By |
|---|---|
| 920 but less than 1,200 | 8 hours |
| 640 but less than 920 | 16 hours |

**Vacation Benefit for Employees Terminating Prior to May 31**

19.16  An employee terminating employment for any reason during a Vacation Base Year and who has 1,200 or more compensable hours in such Vacation Base Year shall receive Vacation Pay in accordance with the employee's years of Vacation Credit Years as of the preceding May 31, in accordance with paragraph 19.14 (above).

19.17  An employee in the employ of the Employer on any June 1 who leaves before the following May 31 because of (a) retirement under the Employer's negotiated Pension Plan, or (b) death, or (c) entering active duty in the United States armed forces (during times when there is compulsory military service) or (d) separation from employment through no fault of his/her own (not including discharges and voluntary quits), and who has 640 but less than 1,200 compensable hours during that period, shall receive Vacation Pay in accordance with paragraph 19.15 (above).

41

GRAY 00026

19.22   For an hourly paid employee - the employee's regular job classification straight time rate in effect on May 31st immediately preceding the Vacation Base Year.

19.23   Effective 6/1/2001, the vacation rate of pay will be the employee's regular job classification straight time rate in effect on June 1st.

19.24   For a regularly classified pieceworker, the average of the employee's straight time hourly piece rate earnings for the last 90-day period preceding the May 31.

19.25   For terminating employees, that portion of Vacation Benefit earned under paragraphs 19.16 through 19.19 (above) (for Vacation Pay based upon compensated hours accumulated during the same Vacation Base Year in which the employee terminates) - the hourly employee's regular job classification straight time rate in effect on the date of termination or, for regularly classified piecework employees, the average hourly straight time piece rate earnings for the last three payroll months preceding the date of termination.

19.26   All vacation rates of pay shall include any applicable shift differential for employees regularly assigned to a swing or graveyard shift.

**Time and Method of Vacation Payment**

19.27   Vacation payments shall be paid by separate check or included in the regular payroll check provided that there is no additional tax withholding (when the check is issued) as elected by the Company. Vacation payment will be issued to eligible employees at the following times:

19.28   For employees taking scheduled vacation time off the vacation pay will be included in the regular paycheck covering the period of vacation. An employee may receive vacation pay in advance provided they make a written request at least 10 working days prior to the start of their scheduled vacation.

43

19.18   An employee otherwise qualifying per paragraph 19.16 (above), having less that 640 compensated hours, shall receive prorated Vacation Pay in accordance with the following schedule:

| Vacation Credit Years as of the Previous May 31 | Amount of Vacation Pay Per 30 Hours Worked |
| --- | --- |
| 1 through 2 years | 1 hour |
| 3 through 5 years | 2 hours |
| 6 through 11 years | 3 hours |
| 12 through 19 years | 4 hours |
| 20 or more years | 5 hours |

19.19   An employee who leaves the employ of the Employer prior to May 31 who has less than 1,200 compensable hours in that Vacation Base Year, and who does not qualify under the provisions of paragraphs 19.16 and 19.17 (above) shall receive no Vacation Benefit.

**Vacation Benefit for Returning Employees**

19.20   An employee returning to the employ of the Employer during a Vacation Base Year following absence:

1.   Due to active duty in the United States armed forces (during periods when there is compulsory military service); or,

2.   For compensable industrial illness or injury which occurred in the course of employment with the employer extending for a period in excess of twenty-four months, and who accrues less than 640 compensable hours in the balance of that Vacation Base year shall receive prorated Vacation Pay in accordance with paragraph. 19.18 (above).

**Vacation Rate of Pay**

19.21   The rate of pay for Vacation Pay purposes shall be computed as follows:

42

GRAY 00027

19.35  If the employer elects to stagger vacation periods individually, the employees will be given preference by seniority, insofar as is practical with the operating needs of the operations, on requests submitted in writing prior to May 1 for the first and second weeks, and 15 days in advance for the third, fourth and fifth weeks.

19.36  Each employee must take Vacation Time Off for the first and second weeks, and for the third week if a close down is elected by the Employer.

19.37  When the Employer elects to stagger the third vacation week, affected employees may elect to take pay in lieu of the third week and qualifying employees may elect pay in lieu of the fourth and fifth weeks in any event.

19.38  When a paid holiday falls within a vacation period, no extra day of vacation will be taken; but no reduction in Vacation Pay shall be made because of holiday pay.

19.39  In cases of breakdown or other emergency, the notices referred to above may be shortened by agreement between the Local Union and the Employer.

**No Duplication of Benefits**

19.40  There shall be no pyramiding or duplication of Vacation Benefits under this Article.

45

19.29  For employees eligible to elect payment in lieu of the third, fourth and/or fifth weeks - no later than the payday for the pay period next following the employee's request.

19.30  For employees not actively at work on May 31st - the first payday following June 1st, if requested in writing at least one week in advance of said payday, unless such employee is reasonably expected to return prior to the first scheduled vacation period.

19.31  For eligible employees terminating for any reason and for employees entering the armed forces (during periods when there is compulsory military service) - with final check.

**Vacation Scheduling - Plant**

In scheduling vacation periods, the following provisions shall apply:

19.32  The Employer may elect to close down the entire operation; or stagger closures by department or shifts (for the first, second and/or third vacation weeks); stagger vacation periods individually (all five vacation weeks); or any combination thereof, and must notify the employees and the Local Union of the choice by April 15, and on request, discuss the method with the Local Union by or before May 1.

19.33  If the Employer elects to close the operation for the first and second weeks, such closure must be scheduled in June, July, or August, unless otherwise agreed upon between the Employer and the Local Union.

19.34  The Employer may schedule the third and fourth weeks (fourth and fifth weeks on a staggered basis) at any time during the Vacation Base Year; but if electing to close down for the third week, the Local Union must be notified by April 15.

44

GRAY 00028

## ARTICLE 20 - HEALTH AND WELFARE

### Employer Participation

20.01 Simpson agrees to participate in the Woodworker District Lodge 1, I.A.M., AFL-CIO Health & Welfare Plan and Trust (otherwise known as The Nelson Trust) in accordance with the definition of "Participating Employer" as defined in the Trust Agreement and, further, Simpson agrees to comply with all provisions of the Trust Agreement including any amendments thereto, and all administrative rules, regulations and procedures duly adopted by the Board of Trustees.

### Contributions to the Trust

20.02 Effective July 1, 2004, based on June hours, the Company agrees to increase the contribution to the Nelson Trust by sixty cents ($0.60) per hour. Thirty cents ($0.30) of this contribution is recognized as being contributed by the employees. The total hourly rate will be $4.09 for each compensable hour noted in article 20.06.

20.03 Effective July 1, 2005, based on June hours, the Company agrees to an increase of thirty cents ($0.30) per hour to the Nelson Trust and which added to the diverted funds from the wage increases make a total of sixty cents ($0.60) per hour additional contribution to the Nelson Trust. The total hourly rate will be $4.69 for each compensable hour noted in article 20.06.

20.04 Effective July 1, 2006, based on June hours, the Company agrees to an increase of twenty-seven and one half cents ($0.275) per hour to the Nelson Trust and which added to the diverted funds from the wage increases make a total of fifty-five cents ($0.55) per hour additional contribution to the Nelson

46

Trust. The total hourly rate will be $5.24 for each compensable hour noted in article 20.06.

20.05 Effective July 1, 2007, based on June hours, the Company agrees to an increase of twenty-seven and one half cents ($0.275) per hour to the Nelson Trust and which added to the diverted funds from the wage increases make a total of fifty-five cents ($0.55) per hour additional contribution to the Nelson Trust. The total hourly rate will be $5.79 for each compensable hour noted in article 20.06.

20.06 It is understood that compensable hours shall include all hours actually worked; hours paid or allowed for Holiday, Jury Duty, Funeral Leave, call time pay, and paid vacation hours, except vacation increment hours.

20.07 Remittances with the accompanying reports shall be sent no later than the 15th day of each month and shall be based on compensable hours within the immediately preceding calendar month.

20.08 Simpson acknowledges receipt of the Trust Agreement and descriptive literature of the Trust, which outlines benefits available through the Trust for participating employees and their dependents.

## ARTICLE 21 - PENSIONS

21.01 The Union, in behalf of the employees, individually and collectively, within the collective bargaining unit covered by this Agreement, and Simpson agree to accept and be bound by the terms and provisions of the pension plan and trust, known as the Simpson Timber Company - IAM Retirement Plan and Trust.

21.02 Accordingly, Simpson agrees to provide benefits as specified in the aforementioned plan and trust, and benefits as agreed in

47

GRAY 00029

the settlement agreement dated June 1, 2004. This plan, trust and agreement is by reference, incorporated herein.

21.03   The Simpson IAM pension plan will be changed to incorporate the following which will be effective for employees who terminate or retire after the date of ratification of this agreement.

21.04   Effective June 1, 2004, increase the normal unreduced benefit to $38.00/month per year of service for employees retiring after the date of ratification.

21.05   Effective June 1, 2005, increase the normal unreduced benefit to $39.00/month per year of service for employees retiring on or after June 1, 2005.

21.06   Effective June 1, 2006, increase the normal unreduced benefit to $40.00/month per year of service for employees retiring on or after June 1, 2006.

21.07   The Company agrees to continue the 401(k) Plan. Such plan will be modified so that effective September 1, 2000, the Company will contribute $.50 for each dollar that the employee contributes out of the first 5% of his/her pay. Employees will vest in Company contributions at the rate of 20% per year. Past service with the Company is recognized for vesting purposes, regardless of whether they have previously participated in the 401(k) plan. Changes made to the Simpson Employee Savings Plan during the term of the contract, excluding changes, which may apply to Company matching contributions, will be incorporated in the Simpson Timber Company Bargaining Unit Savings Plan.

ARTICLE 22 - SAFETY PROGRAM

22.01   Both parties to this Agreement recognize the desirability of reducing injuries in the operation to a minimum. To aid in this purpose, the Union shall elect a Safety Committee of not less than three members but not more than five and Simpson shall

48

appoint an equal number. The Union representatives shall be regular employees of Simpson and shall have had at least one year of experience in the portion of the industry over which their inspection shall extend. Safety inspections shall be made periodically to include inspection of all the operation at least once a month. The Committee shall make a report covering the unsafe conditions. This report shall be included in the minutes of the current monthly safety meetings. The parties shall formulate reasonable terms and provisions for the operation of the Safety Committee. Said Safety Committee shall conform in all respects with the requirements of the "logging and sawmill safety orders," of the State of California, as effective January 12, 1952, and to any revisions or amendments thereto.

22.02   Any employee who removes a safety device from the job without first having the consent of the Safety Committee, or who violates any published or posted safety rules adopted by the Safety Committee, shall be subject to immediate discharge.

22.03   Any dispute as to whether or not an operation is being carried on in a safe manner shall be referred for settlement to the Safety Committee. If the Committee is unable to agree, both parties shall call in the head of the California Industrial Accident Division or someone designated by him. The report of the inspector or his/her nominee shall be given due consideration by all.

22.04   The safety inspections provided for above shall be made on Simpson time; however, attendance at a dinner meeting is entirely voluntary, and any employee attending such dinner meeting does so with the understanding that their time is not being compensated for by Simpson).

ARTICLE 23 - PERMANENT PLANT CLOSURES

23.01   In the event that there is a permanent plant or partial plant closure (see paragraph 23.07) during the term of this

49



agreement, affected employees (see paragraph 23.08) will be given severance options as follows:

23.02  Affected employees with less than 10 years continuous service will receive 32 hours of pay at the employees' last regular rate of pay for each full year of continuous service.

23.03  Affected employees with 10 or more years of continuous service will receive 40 hours at the employees' last regular rate of pay for each full year of continuous service.

23.04  Full years of service with Simpson as of the date of permanent curtailment will be used to calculate severance pay.

23.05  Affected employees will have the option to choose severance pay as above or accept curtailment status with seniority rights under the Labor Agreement.

23.06  Affected employees electing severance pay will lose all rights under the Labor Agreement as of the date of curtailment.

23.07  Partial plant closure is defined as the announced permanent elimination of a complete operation of production, not just crewing size. Reductions of force resulting from equipment changes are not to be considered as a partial plant closure.

23.08  Affected employees are defined as only those employees who are permanently holding bid rights to jobs that are to be permanently eliminated and due to seniority provisions would be required to accept curtailment out of their classification or primary function (in team system).

## ARTICLE 24 - STRIKES AND LOCKOUTS

24.01  During the life of this agreement, the employer shall not lock out nor shall the Union or any employee(s) strike, slow down, or participate in any work stoppage as a result of any grievance or dispute concerning the interpretation or operation of this agreement.

---

24.02  At no time shall employees be required to act as strikebreakers or to go through picket lines or armed guards, but security personnel shall remain on the job for the protection of the plant. Other employees who may be needed to protect material in process or production or to move equipment to safe places, or otherwise protect the property, shall remain on the job for the time necessary.

24.03  This Article does not apply to strikes or other economic actions over negotiations for a new, amended or revised labor agreement pursuant to Article 25, (Revisions and Termination) provided that conditions set forth in that Article are complied with.

## ARTICLE 25 - REVISION AND TERMINATION

25.01  This agreement shall remain in full force and effect through May 31, 2008, and shall be automatically renewed thereafter from year to year, unless at least sixty days prior to the anniversary date either party serves upon the other a written notice of cancellation, in which event the Agreement shall be terminated upon said anniversary date.

25.02  In the event that either party desires to amend rather than cancel this Agreement, said party shall serve upon the other party at least sixty days prior to the anniversary date, a written notice of its desire to amend this Agreement. Thereafter, and at least forty-five (45) days prior to the anniversary date, either party desiring to amend shall submit its proposed amendments in writing to the other party. Negotiations shall thereafter commence at any time mutually agreeable to the parties, but not later than thirty days prior to the anniversary date, and shall continue until amendments have been agreed to or until the parties, or either of them, recognize that they are unable to agree on proposed amendments, in which case either party may then serve upon the other party a thirty day notice of termination of this Agreement.

GRAY 00031

27.03 Simpson and the Union have caused this agreement, as amended in accordance with the 2004 negotiations, to be executed by their duly authorized officers on this 15th day of June, 2004.

SIMPSON TIMBER COMPANY - KORBEL OPERATIONS:

Al Fortener
Randy Robertson

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, WOODWORKERS DISTRICT LODGE 1, IAM LOCAL LODGE W98.

Roger Woods        Ron Wilson        Chuck Macrae
Bonnie Sue George  Keith McKinney

53

---

25.03 Except as noted herein, all plant past practices and written agreements in effect prior to 1/26/85, shall cease to exist and will no longer be binding upon either party for any purpose. Practices that are established after 1/26/85, shall be signed and shall be binding upon the parties, provided further that no practice shall be established which conflicts with the terms of this Labor Agreement unless agreed to in writing by the parties hereto. This agreement may be revised during its existence, provided the proposed revisions are mutually approved and agreed upon by the parties herein.

ARTICLE 26 - NOTICE

26.01 All notices provided for in this Agreement shall be in writing. Union may give any notice hereunder to Simpson by delivering such notice to Simpson Timber Company. Simpson may give notice hereunder to Union by delivering such notice to the President or Secretary of International Association Of Machinists And Aerospace Workers, Woodworkers District Lodge 1, IAM Local Lodge W98.

ARTICLE 27 - LEGAL STATUS

27.01 If any provision of this Agreement is in contravention of the laws or regulations of the United States or of the State of California, such provision shall be superseded by the appropriate provision of such laws or regulations so long as same are in force and effect, but all other provisions of this Agreement shall continue in full force and effect. If the parties are unable to agree as to whether or not any provision hereof is in contravention of any such law or regulation, the provision hereof involved shall remain in effect until the disputed matter is settled by the court or other authority having jurisdiction in the matter.

27.02 This Labor Agreement is the combination of numerous other agreements and is subject to change upon identification of mutually agreed upon clerical errors and/or oversights in its preparation.

52

## MEMORANDUM OF AGREEMENT
### W-1/P-1

The company, Korbel management, agrees to notify the local union in the event work is to be done by non-bargaining unit personnel of a non-emergency and non-routine nature.

Upon request, the company agrees to meet with the union to discuss ramifications of the work to be done when the company owns the necessary equipment, and whenever there are curtailed employees and employees in the operation with proper skills and abilities available to do such work.

Date of original agreement: February 23, 1977.
Modified: June, 1996

55

# MEMORANDUM OF AGREEMENTS

54

GRAY 00033

## MEMORANDUM OF AGREEMENT
### P-2
### Korbel Plant Maintenance

Primary duties of employees in the Millwright Helper Oiler Classification shall be lubrication; however, when available they will be expected to perform millwright helper duties.

Maintenance employees that have the "utility" designation added to their classification shall have their rates of pay increased by a Utility premium. Employees holding a maintenance classification with the designation of "utility" will be expected to perform functions of their primary classification (i.e. Millwright, Electrician, etc.) and will be expected to have the qualifications of that primary classification. In addition, and to the extent the employee's skill will allow, employees in these classification will be expected to perform work outside their primary classification as necessary within the Maintenance Department.

The classification of Millwright Helper Oiler becomes the entry-level position into the Maintenance Department and will be awarded without specific qualification.

Date of original agreement: February 28, 1978.  Revised: 6/1/96

57

---

## MEMORANDUM OF AGREEMENT
### Maintenance Shift Change
### P-1

Simpson Timber Company and IAM Local Lodge W98 agree to the following on a non-precedent setting basis for the scheduling of four (4) maintenance shifts in the Korbel Lumber Production facility. This agreement does not set precedent nor give either party a right they did not previously have under the labor agreement in establishing work schedules.

Shift Schedule:

|  |  | Sun | Mon | Tues | Wed | Thurs | Fri | Sat |
|---|---|---|---|---|---|---|---|---|
| Crew 1 | Days | X | X | X | X |  |  |  |
| Crew 2 | Nights | X | X | X | X |  |  |  |
| Crew 3 | Days |  |  |  | X | X | X | X |
| Crew 4 | Nights |  |  |  | X | X | X | X |

**Pay Rate:**

• $.35 weekend rate for maintenance crew's three and four, all hours worked as currently applied. This would apply to both the day and swing shifts. Swing shift employees are paid appropriate shift differential.

• $.35 weekend rate for *Sunday only weekend work*: Sunday through Wednesday shifts, both day and swing shifts.

• $.40 utility rate added to those millwrights, electricians, carpenters and machinists not currently receiving the utility rate.

**Curtailment:**

In the event of an unplanned curtailment of the third sawmill production shift that is three (3) months or longer; the production and maintenance shifts would return to the production and maintenance schedule of June 1, 1998. Shift configuration is effective after application of normal curtailment language.

Date of Original Agreement: 7/1/98

56

GRAY  00034

## MEMORANDUM OF AGREEMENT
## P-4

In order to meet the common objective of producing quality building materials at competitive prices, Simpson and Woodworkers Local Lodge W 98 and all employees agree that those people involved in grievance handling and contract administration at the Simpson Korbel Plant will live by the following standards of conduct.

Common decency and mutual respect will be observed in all contacts between Union representatives and supervisors. Supervisors will not belittle union representatives and union representatives will not attempt to countermand or encourage disobedience to supervisors' requests. Both parties realize that "work now, grieve later" is a basic principle by which plant labor relations are to be guided, and that resolution of disputes is best accomplished in a quiet, unemotional environment.

Plant rules are for everybody's benefit and apply to everybody. Supervisors and union representatives recognize their special responsibility to set an example by abiding by these rules.

In order to minimize production disruption, supervisors and stewards will make every effort to discuss grievances on non-production time. The company realizes that, on occasion, stewards or committee persons need to speak to employees. In doing so, those union representatives will not neglect their regular jobs and will not cause other employees to neglect theirs. If it becomes necessary for a steward to leave his/her work area to handle a grievance, he or she will notify his/her supervisor first and request permission. Permission will be granted unless the supervisor's department operations require the steward's presence, in which event the steward will be relieved at the earliest opportunity.

So as to avoid as much as possible the need for relieving employees for union business, it is agreed that unless it is required, union business will be conducted away from the work place. Necessary plant visits by the union business agent or assistant business agent will be made during plant operating hours. In an effort not to disrupt operations, employee conferences will be held away from the employees' immediate work area.

## MEMORANDUM OF AGREEMENT
## P-3

The following classifications shall apply to the Korbel Plant Filing Room:

Filer Helper Trainee
Filer Helper "B"
Filer Helper "A"
Bench Person
Head Filer

When a vacancy occurs in the Filing Room, the job will be posted in accordance with contractual specifications. The job will be awarded to the senior qualified bidder.

If a trainee is selected the selected person will enter the department on a permanent basis on the day shift under the direction of the Head Filer. The trainee will be given every opportunity to attain the minimum qualifications of Filer Helper "B". On or before the end of the 90-day trial period, the trainee must demonstrate, to the satisfaction of the Head Filer and management, the ability to perform the job of Filer Helper "B". If qualified, he or she progresses to the Filer Helper "B" classification. If the trainee cannot demonstrate his/her ability to perform his/her job, he or she will return to his/her last permanent primary function and the Filer Helper Trainee job will be re-posted.

The qualified person would then begin a trial period of 90 days from the date of classification of Filer Helper "B". During this period, he or she would be permitted to train and qualify for the Filer Helper "A" classification. On or before the end of the 90-day trial period, the Filer Helper "B" must demonstrate, to the satisfaction of the Head Filer and management, his/her ability to perform the job of Filer Helper "A". If the Filer Helper "B" can demonstrate his/her ability to do the job, he or she progresses to the Filer Helper "A" classification. If the Filer Helper "B" cannot demonstrate the ability to perform his/her job, he or she returns to their last permanent primary function, and the job will be re-posted.

Date of original agreement: May 27, 1975.
Date of revised agreement language: May 21, 2004

GRAY 00035

This provision is not meant to supersede the labor agreement, but only to provide a proper procedure to application of the existing agreement.

The plant manager, acting plant manager, the plant industrial relations representative or authorized representative will do their best to promptly provide legitimate information requested by union representatives in connection with grievances and/or negotiations. These individuals are the proper sources for Union officials to secure such information. This provision is not meant to limit discussion or exchanges of legitimate information between the first line supervisor and union representatives.

Both parties agree that the regular grievance procedure is the proper method of raising and resolving employee and union complaints and disputes. The union agrees not to use or condone the use of refusal of overtime to gain a bargaining point or to resolve a grievance.

In the event that any member of management, other than the first line supervisors, wishes to be present at a first step grievance meeting with the union steward, the union steward may request the assistance of a plant committee member or business agent.

In recognition of the need for future change in the Korbel Plant operations and the need to successfully make change with the least possible disruption, the company agrees that where changes take place that call for negotiations over the impact and/or effects of those changes, the company will notify the union and employees of the desired change in advance of those implementations so that negotiations can take place.

Date of original agreement: August 24, 1978.

**UNION ACTIVITIES:**

1.  Union officials will make every effort to conduct union business with employees on non-production time to avoid disruption.

2.  Union officials will not conduct union business with employees at the employee's workstation but, rather, will do so away from the work area on non-production time. This stipulation is not intended to prohibit or control the exchange of greetings between union officials and employees, nor communications between the union official and the employee to meet at some off-job site time and place.

3.  The parties recognize that on occasion a union official may need to conduct union business with an employee who is on duty and urgency won't allow waiting until that employee is off-duty to do so. In such cases, the Union official will advise the supervisor and request that the employee be allowed to meet with him/her as soon as possible.

The supervisor will arrange for the employee's availability to meet with the union official as soon as possible thereafter and the ensuing conference between them will be conducted away from the work place and concluded as quickly as possible, after which the employee will return to his/her job.



GRAY 00036

## MEMORANDUM OF AGREEMENT
## P-6
## SUBSTANCE ABUSE POLICY

Chemical substance and alcohol abuse is a disease which is treatable and will be given the same consideration as any other illness, with the emphasis on rehabilitation and not on the termination of an employee. it is desired that employees won't be under the influence of any substance that could impair safe and productive performance while on Company business or Company premises.

1. The sale, offer for sale, use or distribution of illegal drugs or controlled substances and the unauthorized possession or consumption of alcohol on Company property is prohibited. The sale or distribution of legal drugs (prescription) is also prohibited. These may result in immediate disciplinary action up to and including discharge.

2. No random testing shall be permitted, except as may be required by a reentry agreement.

   a. An employee may be required to submit to an Immunoassay test if a reasonable, objective basis exists to believe that an employee is functionally impaired. (Chromatography, Gas Chromatography and/or Gas Chromatography - Mass Spectrophotometry tests will be used to confirm positive findings.) Modify the levels at which samples shall be considered positive to those in effect on June 1, 1996, by the D.O.T. for truck drivers.

   b. A reasonable, objective basis will exist if a first hand observation is made of the employee's job performance by a supervisor and that the supervisor document in writing prior to any test that the employee's conduct or actions are indicative of alleged impairment. The supervisor's documented report and an order for testing must be concurred with by a superintendent or manager. The Company will not automatically require a clinical test when an industrial accident occurs. Employees who are directly or indirectly involved in an industrial injury

## MEMORANDUM OF AGREEMENT
## P-5
## Industrial Injury Procedure

In cases where a trip to a medical facility is required during the first half of the shift, the employee involved shall receive pay for one-half of their shift. In cases where such a trip is required during the second half of the shift, the employee involved shall receive pay for a full shift.

When an employee returns to work and completes that shift following a trip to a medical facility, the employee shall receive full pay.

To be eligible for pay in any case, the trip must take place on the day of the industrial injury.

Date of original agreement: August 21, 1980. Revised: 6/1/96

GRAY 00037

specified by the involved rehabilitation counselor or nine consecutive months, whichever is greater.

3. A union steward or committee person shall be present at any employer meeting with an employee where the subject of drug/alcohol usage or testing or resulting disciplinary action is discussed, unless the employee specifically requests to meet without union representation.

4. The Company shall initially select a reputable facility for base testing and confirmatory testing at Company expense. The facility must meet all standards set by Federal health agencies or College for American Pathologists for laboratory performance and must employ certified medical technologists and technicians. The union will be provided with the testing facility name, address and credentials. The union retains the right to request a change in test procedure or test facility based on mutually acceptable reliable information, which disproves the accuracy or quality of either. The union also retains the right to request a change in the testing procedure or test facility when a reasonable and superior alternative to either is available.

a. Employee representatives and/or the employee will have the opportunity to review the testing procedure.

b. All samples which test positive will be confirmed using a gas chromatography/mass spectrometry test or a superior or equally reliable test if same becomes reasonably available.

c. The employee, at his/her expense, will have the opportunity to have a reputable testing facility test (using only the same chromatography/mass spectrometry test with the same threshold standards applied as those used by the employer's laboratory) the same sample submitted to the original test facility. Accepted chain of custody procedures must be followed between the employer's lab and the employee designated lab and the test facility must meet all standards set by Federal health agencies or by the College for American Pathologists for laboratory performance using certified medical technologists and technicians. An employee may request the independent test by notifying the employee relations manager

65

which requires medical care are subject to submitting to a blood and/or urine chemical test only if there is specific objective fact(s) to indicate possible drug and/or alcohol use at the time of the accident.

c. An employee to be tested will be counseled as to the reason(s) for the chemical test in the presence of a committee member, if available on shift, otherwise a steward. The employee will be shown the testing/consent form (see attachment) and given an explanation of its use. If the employee refuses to sign the form, he/she will be advised that the refusal constitutes insubordination which is subject to immediate disciplinary action up to and including discharge. If the employee still refuses he/she is to be immediately suspended (committee member if available on shift, otherwise a steward in attendance) to be advised of employment or disciplinary action status within 48 hours. Supervisor will arrange employee transportation home.

d. Positive test results under the above circumstances will result in the employee being offered, on a one time basis, the option(s) of a thirty calendar day suspension or rehabilitation by a recognized, competent facility established for such purposes. Employee will be given an unpaid leave of absence if necessary for his rehabilitation and upon completion of the rehabilitation program or suspension will be reinstated without loss of seniority. Further violations of this policy by the same employee could result in termination.

e. Before returning to work under paragraph D, above, the employee will be required to complete a reentry agreement. This agreement will generally be in a letter to the employee format that documents the conditions under which the employee may return to work based on that individual's situation. In cases involving rehabilitation the Company will use the recommendation of any involved rehabilitation counselor in developing the terms of the agreement and will involve a plant committee member or steward in such discussion. In the event that random testing is included in the reentry agreement, the duration of that testing requirement will not exceed the time

64

GRAY 00038

# SIMPSON TIMBER COMPANY - REDWOOD OPERATIONS RELEASE AND CONSENT FORM
(For Current Employees)

## CHEMICAL TESTING

I, _____ do hereby give my consent to Simpson Timber
(Print Name)
Company, Dr. David Salter M.D., Mad River Community Hospital Occupational Health and (in Del Norte County) to Sutter Coast Hospital Emergency Room, to perform appropriate urinalysis and blood tests to identify the presence of alcohol or drugs.

As a Simpson employee, I have been hereby warned that refusal to consent to chemical testing will be considered insubordination. The consequence for insubordination is immediate disciplinary action up to and including discharge. I further give my permission to Medtox Laboratories or Quest Diagnostics to release the results of the tests to Simpson's appointed physician and Simpson Timber Company. I understand that any test information acquired will be used only by appropriate Simpson personnel or the Employee Assistance Program personnel on a need-to-know basis. I further understand that any tampering with the sample or misrepresentation of information I make herein will be grounds for disciplinary action up to and including termination.

If you've taken any substances which might affect your fitness for work or might impair and if you wish to make the collection site listed above aware of any such substance as they perform the appropriate tests and evaluate their results, you may (at your option) complete the following section. However, if you prefer not to provide such information, you need only leave that section of this consent form blank, in which case you will, of course, be bound by whatever the test results may be.

You must sign and date the form as must the witness.

Name of Drug or Substance          Prescribing Physician
(Include Non-prescription Medication)(If Any)

_____          _____
_____          _____
_____          _____

When did you last consume any alcohol?          Amount Consumed

_____          _____
Signature of Applicant     Date          Witness Signature     Date

67

---

in writing, specifying the laboratory to be used, within two calendar days after the day the employee is informed of the test results. If the chemical test result from the lab designated by the employee is negative and an investigation reveals no reasonable explanation for the difference in test results, the employee will be reimbursed for the time lost from work.

d.  Any test result will be kept confidential, will be maintained in the EAP file by the employee relations manager and shall be available only to the employer and, if authorized in writing by the employee, to the designated union representative and legal representative (if any).

5.  If any action or proceeding is brought in a court of law against the union arising from the Company's activities in carrying out this drug/alcohol testing program, the Company shall indemnify and hold the union harmless, and the Company shall defend any such action or proceeding at Company's expense provided the parties mutually agree to the selection of defense counsel for the union. Simpson's obligation under this paragraph shall be contingent upon Simpson receiving written notice of any such action or proceeding within five (5) working days of the time the union is first aware of the action or proceeding.

6.  This policy is subject to Article 14, Grievance Adjustments.

Revised: 6/1/96

66

GRAY 00039

## MEMORANDUM OF AGREEMENT
## GRADER CERTIFICATION INCENTIVE POLICY
## P-7

The purpose of this document is to describe, clarify and formalize current policy for paying graders an incentive increase once the grader is considered qualified by R.I.S. and is awarded "Certification" in a given grade category. Paying graders an incentive increase as a result of earned certifications from R.I.S. is done as an incentive to graders to maintain a high level of accuracy in their grading. This document will cover when a grader is to be given an incentive increase based on receiving a new certification, what percentage of "on grade" will be required to maintain the increase and what steps will be necessary to reinstate an increase for the grader if the percentage is not maintained.

Our policy is to pay graders an additional $.30 per hour for each redwood certification and $.30 per hour for each fir certification. Within the payroll system, we have allowed for three redwood certifications and three fir certifications. If a grader has earned all six certifications, the grader would be paid $1.80 over the base grader wage. There exists, within our current product line, six possible certifications. There is one grader who is close to earning an additional certification in fir for Posts and Timbers. Posts and Timbers only requires 250 pieces for certification by the R.I.S. This would add a forth certification in fir.

| R.I.S. Category | R.I.S. Description | Grades used at Korbel |
|---|---|---|
| A | Clear All Hrt, Clear, B, etc | B-Deck |
| B | General Purposes | Con Hrt, Con Com, Merch |
| D | Special Purposes | Deck Hrt, Deck Com |
| H | Light Framing | Stand, Const, Utility (2x4, 4x4 fir) |
| K | Structural Light Framing | #1hr (2x4 fir) |
| J | Structural Joists & Planks | Sel Struct, #1, #2, #3 |
| Z | Posts and Timbers | Sel Struct, #1, #2, #3 (5x5 or >) |

Requirements:

A grader not currently certified in a given grade category will receive an incentive increase, based on $.30 for each additional certifications in Redwood and $.30 for each additional fir certifications. The effective date will be the date the grader earned the certification.

A grader who is certified by R.I.S. in a given grade category but who earned the certification while working at a location other than Simpson Korbel will be paid the certification increase (same as above) when the grader has had a minimum of 200 pieces of lumber from a minimum of three grade checks in the given grade category inspected by R.I.S. and found to be 94.75% or above on grade (including above grade). The effective date for granting the certification will be the date the grader meets these requirement, as determined by the Quality Assurance Supervisor. In addition, the grader must demonstrate to the Quality Assurance Supervisor, knowledge of the grade category requirements as graded at Simpson-Korbel, the knowledge and use of 'trim to upgrade' policy as used at Korbel, knowledge of the sizes and stamps used for the various grades at Korbel and must demonstrate an ability to keep up with the flow of lumber by grading their "share" at Korbel. Effective date will be the the date the grader meets these requirements as determined by the Quality Assurance Supervisor.


GRAY 00040

ADDENDUM "A" - KORBEL WAGE RATES

| TEAM/CLASS/PRIMARY FUNCTION | CLASS | RATE EFF. 06/01/04 | RATE EFF. 06/01/05 $0.25 | RATE EFF. 06/01/06 $0.275 | RATE EFF. 06/01/07 $0.275 |
|---|---|---|---|---|---|
| **KORBEL SAWMILL DEPARTMENT** | | | | | |
| **SAWMILL TEAM** | | | | | |
| **MEMBER "A"** | SMMA | | | | |
| Bark Hog Operator | | 16.840 | 17.090 | 17.365 | 17.640 |
| Barker Operator | | 16.840 | 17.090 | 17.365 | 17.640 |
| Bucking Station Operator | | 16.840 | 17.090 | 17.365 | 17.640 |
| Knuckle Boom Operator | | 16.840 | 17.400 | 17.925 | 18.200 |
| Tally Person – Lead | | 16.830 | 17.080 | 17.355 | 17.630 |
| **MEMBER "B"** | SMMB | | | | |
| *There are no more jobs!* | | | | | |
| **MEMBER "C"** | SMMC | | | | |
| Cant Quad Oper. | | 19.420 | 19.670 | 19.945 | 20.220 |
| Log Quad Oper. | | 19.420 | 19.670 | 19.945 | 20.220 |
| **MEMBER "D"** | SMMD | | | | |
| Edger Operator | | 16.900 | 17.150 | 17.425 | 17.700 |
| Horizontal Resaw Operator | | 16.970 | 17.220 | 17.495 | 17.770 |
| Optimizer Edger Operator | | 17.250 | 17.500 | 17.775 | 18.050 |
| Relief – Mill | | 16.900 | 17.150 | 17.425 | 17.700 |
| **MEMBER "E"** | SMME | | | | |
| Grader/Trap | | 17.030 | 17.280 | 17.555 | 17.830 |
| Grader By-Pass | | 17.030 | 17.280 | 17.555 | 17.830 |
| Grader Trim/Trap | | 17.080 | 17.330 | 17.605 | 17.880 |
| Grader Twin Resaw Operator | | 17.310 | 17.560 | 17.835 | 18.110 |
| Q.C. Grader | | 17.630 | | | |
| Resaw-Reedge | | 18.155 | | 18.430 | |
| Grader By Pass | | 17.310 | 17.560 | 17.835 | 18.110 |
| **MEMBER "F"** | SMMF | | | | |
| Cleanup Utility | | 15.560 | 15.810 | 16.085 | 16.360 |

---

# MEMORANDUM OF AGREEMENT

## TANDEM RESAW OPERATOR

### P-8

Woodworkers Local Lodge W98 hereby agrees with the Simpson Timber Company substantial job content change proposal for the Tandem Resaw Operator of $0.35 per hour increase. The new rate will be $17.25 per hour. This increase to be retroactive to March 22, 2004 for three employees currently holding the Tandem Resaw Operator classification. They are Larry Hull, Danny Norman and Jon West.

Agreed to on this date:  November 4, 2004

**Simpson Timber Company**

Al Fortner
Randy Robertson

**Woodworkers Local Lodge W98**

Marv Abbott
Roger Woods
Cliff Grummert
Bonnie Sue George
Bill Trageser

GRAY 00041

| TEAM/CLASS/PRIMARY FUNCTION | CLASS | RATE EFF. 06/01/04 | RATE EFF. 06/01/05 $0.25 | RATE EFF. 06/01/06 $0.275 | RATE EFF. 06/01/07 $0.275 |
|---|---|---|---|---|---|
| MEMBER "G" | SMMG | | | | |
| Relief - Remill | | 17.030 | 17.280 | 17.555 | 17.830 |
| MEMBER "H" | SMMH | | | | |
| Sticker-Stacker Oper. | | 16.360 | 16.610 | 16.885 | 17.160 |
| Sorter-Chaser | | 15.510 | 15.760 | 16.035 | 16.310 |
| Tandem Trap Operator | | 15.510 | 15.760 | 16.035 | 16.310 |
| MEMBER "I" | SMMI | | | | |
| Cleanup Equipment Oper. | | 15.220 | 15.470 | 15.745 | 16.020 |
| Laborer | | 15.220 | 15.470 | 15.745 | 16.020 |
| Lead Laborer | | 15.540 | 15.790 | 16.065 | 16.340 |
| **KORBEL REMANUFACTURING DEPARTMENT** | | | | | |
| **PLANER TEAM** | | | | | |
| 2 PLANER PERSON | 2PPP | | | | |
| 2 Planer Person | | 17.440 | 17.690 | 17.965 | 18.240 |
| 2 GRADER | 2PGR | | | | |
| 2 Grader | | 16.840 | 17.090 | 17.365 | 17.640 |
| 2 MEMBER "A" | 2PMA | | | | |
| 2 Breakdown Hoist Oper. | | 16.220 | 16.470 | 16.745 | 17.020 |
| 2 Forklift Driver/Laborer | | 16.150 | 16.400 | 16.675 | 16.960 |
| 2 Breakdown | | 16.150 | 16.400 | 16.675 | 16.960 |
| 2 MEMBER "B" | 2PMB | | | | |
| 2 Forklift Driver/Tally Person | | 16.410 | 16.660 | 16.935 | 17.210 |
| 2 Lumber Puller | | 16.060 | 16.310 | 16.585 | 16.860 |
| 2 Refilm | | 16.060 | 16.310 | 16.585 | 16.860 |
| 2 Tally Person | | 16.190 | 16.440 | 16.715 | 16.990 |
| 2 Laborer | | 15.170 | 15.420 | 15.695 | 15.970 |
| 3 PLANER PERSON | 3PPP | | | | |
| 3 Lead Planer Person | | 19.580 | 19.830 | 20.105 | 20.380 |
| 3 Planer Feeder | | 17.460 | 17.710 | 17.985 | 18.260 |
| 3 Planer Person | | 18.060 | 18.310 | 18.585 | 18.860 |

72

| TEAM/CLASS/PRIMARY FUNCTION | CLASS | RATE EFF. 06/01/04 | RATE EFF. 06/01/05 $0.25 | RATE EFF. 06/01/06 $0.275 | RATE EFF. 06/01/07 $0.275 |
|---|---|---|---|---|---|
| 3 GRADER | 3PGR | | | | |
| 3 Grader | | 16.840 | 17.090 | 17.365 | 17.640 |
| 3 Grader/Trimmer | | 17.170 | 17.420 | 17.695 | 17.970 |
| 3 Lead Trimmer/Grader | | | 18.240 | 18.515 | 18.790 |
| 3 Trimmer | | 17.490 | 17.740 | 18.015 | 18.290 |
| 3 MEMBER "A" | 3PMA | | | | |
| 3 Breakdown Hoist Oper | | 16.220 | 16.470 | 16.745 | 17.020 |
| 3 Forklift Driver | | 16.150 | 16.400 | 16.675 | 16.960 |
| 3 Forklift Driver/Tally Person | | 16.410 | 16.660 | 16.935 | 17.210 |
| 3 Lead Strapper Operator | | 16.920 | 17.170 | 17.445 | 17.720 |
| 3 Lumber Puller | | 16.060 | 16.310 | 16.585 | 16.860 |
| 3 Stacking Hoist | | 16.630 | 16.880 | 17.155 | 17.430 |
| 3 Strapping Machine Oper. | | 16.480 | 16.730 | 17.005 | 17.280 |
| 3 Unit/Wrap Tally | | 16.260 | 16.510 | 16.785 | 17.060 |
| 3 MEMBER "B" | 3PMB | | | | |
| 3 Cleanup Utility | | 15.560 | 15.810 | 16.085 | 16.360 |
| Laborer | | 15.170 | 15.420 | 15.695 | 15.970 |
| 3 Unit Wrap Laborer | | 15.170 | 15.420 | 15.695 | 15.970 |
| **SHIPPING & YARD TEAM** | | | | | |
| OPERATOR | YDOP | | | | |
| Yard Forklift Driver (Fueling) | | 16.150 | 16.400 | 16.675 | 16.960 |
| Yard Forklift Driver (No Spotter) | | 16.150 | 16.400 | 16.675 | 16.960 |
| Yard Forklift Driver (With Spotter) | | 15.790 | 16.040 | 16.315 | 16.590 |
| Kiln Helper | | 16.120 | 16.370 | 16.645 | 16.920 |
| Kiln Operator | | 17.590 | 17.840 | 18.115 | 18.390 |
| Kiln Operator/Forklift Driver/Mechanic | | 17.400 | 17.650 | 17.925 | 18.200 |
| MEMBER "A" | YDMA | | | | |
| Yard Forklift Spotter | | 15.370 | 15.620 | 15.895 | 16.170 |
| Yard Forklift Spotter (Air Yard) | | 15.560 | 15.810 | 16.085 | 16.360 |
| Forklift Spotter (Kiln) | | 15.560 | 15.810 | 16.085 | 16.360 |

GRAY 00042

GRAY 00043

| TEAM/CLASS/PRIMARY FUNCTION | CLASS | RATE EFF. 06/01/04 | RATE EFF. 06/01/05 $0.25 | RATE EFF. 06/01/06 $0.275 | RATE EFF. 06/01/07 $0.275 |
|---|---|---|---|---|---|
| Sticker Placer | | 15.370 | 15.620 | 15.895 | 16.170 |
| MEMBER "B" | YDMB | | | | |
| ***There are no more jobs!*** | | | | | |
| MEMBER "A" | SHMA | | | | |
| Car Loader | | 16.690 | 16.940 | 17.215 | 17.490 |
| Car Strapper | | 15.790 | 16.040 | 16.315 | 16.590 |
| Shipping Forklift Driver | | 15.790 | 16.040 | 16.315 | 16.590 |
| Shipping Forklift Driver (Yard Mule) | | 16.580 | 16.830 | 17.105 | 17.380 |
| Tally Supervisor | | 17.640 | 17.890 | 18.165 | 18.440 |
| Tallyperson (Computer Use) | | 16.120 | 16.370 | 16.645 | 16.920 |
| Tallyperson (Unit Wrap) | | 15.990 | 16.240 | 16.515 | 16.790 |
| Truck Loader | | 17.130 | 17.380 | 17.655 | 17.930 |
| Utility Person | | 15.940 | 16.190 | 16.465 | 16.740 |
| MEMBER "B" | SHMB | | | | |
| Shipping Forklift Spotter | | 15.370 | 15.620 | 15.895 | 16.170 |
| MEMBER "C" | SHMC | | | | |
| **KORBEL FILING DEPARTMENT** | | | | | |
| **FILING & GRINDING TEAM** | | | | | |
| Benchperson | | 19.640 | 19.890 | 20.165 | 20.440 |
| Filer Helper A-Fitter | | 17.710 | 17.960 | 18.235 | 18.510 |
| Filer Helper B | | 16.070 | 16.320 | 16.595 | 16.870 |
| Head Filer | | 21.190 | 21.440 | 21.715 | 21.990 |
| Filer Helper Trainee | | 15.610 | 15.860 | 16.135 | 16.410 |
| Grinderperson | | 17.320 | 17.570 | 17.845 | 18.120 |
| Remanufacturing Filer | | 18.680 | 18.930 | 19.205 | 19.480 |
| Filer Helper-Grinderperson | | 16.900 | 17.150 | 17.425 | 17.700 |
| Lead Benchperson | | 20.290 | 20.540 | 20.815 | 21.090 |
| Lead Fitter | | 18.350 | 18.600 | 18.875 | 19.150 |

| TEAM/CLASS/PRIMARY FUNCTION | CLASS | RATE EFF. 06/01/04 | RATE EFF. 06/01/05 $0.25 | RATE EFF. 06/01/06 $0.275 | RATE EFF. 06/01/07 $0.275 |
|---|---|---|---|---|---|
| **MAINTENANCE DEPARTMENT** | | | | | |
| **MAINTENANCE TEAM** | | | | | |
| Carpenter | | 18.910 | 19.160 | 19.435 | 19.710 |
| Electrician | | 18.910 | 19.160 | 19.435 | 19.710 |
| Electronics Coordinator | | 19.520 | 19.770 | 20.045 | 20.320 |
| Electronics Technician | | 19.420 | 19.670 | 19.945 | 20.220 |
| Electronics Trainee | | 16.420 | 16.670 | 16.945 | 17.220 |
| Hydraulics Mechanic | | 18.910 | 19.160 | 19.435 | 19.710 |
| Lead Electrician | | 19.580 | 19.830 | 20.105 | 20.380 |
| Lead Electronics Technician | | 20.030 | 20.280 | 20.555 | 20.830 |
| Lead Machinist | | 19.580 | 19.830 | 20.105 | 20.380 |
| Lead Millwright | | 19.580 | 19.830 | 20.105 | 20.380 |
| Machinist | | 18.910 | 19.160 | 19.435 | 19.710 |
| Millwright | | 18.910 | 19.160 | 19.435 | 19.710 |
| Mobile Equipment Operator | | 16.410 | 16.660 | 16.935 | 17.210 |
| Oiler Handyman | | 17.230 | 17.480 | 17.755 | 18.030 |
| Oiler Millwright Helper | | 16.350 | 16.600 | 16.875 | 17.150 |
| Trainee | | 15.370 | 15.620 | 15.895 | 16.170 |
| **DECK DEPARTMENT** | | | | | |
| **DECK TEAM** | | | | | |
| Deck Loader | | 16.380 | 16.630 | 16.905 | 17.180 |
| Equipment Operator | | 17.610 | 17.860 | 18.135 | 18.410 |
| Mobile Log Loader Operator | | 19.210 | 19.460 | 19.735 | 20.010 |
| Truck Driver | | 17.690 | 17.940 | 18.215 | 18.490 |
| **EQUIP MAINTENANCE DEPARTMENT** | | | | | |
| **SHOP TEAM** | | | | | |
| Heavy Duty Mechanic/Electrician | | 20.250 | 20.500 | 20.775 | 21.050 |
| Mechanic, Heavy Duty | | 19.560 | 19.810 | 20.085 | 20.360 |
| Mechanic, Lead | | 20.250 | 20.500 | 20.775 | 21.050 |
| Service Person | | 17.670 | 17.920 | 18.195 | 18.470 |

1    (PROOF OF SERVICE BY MAIL - 1013a, 2015.5 C.C.P.)

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3    I am employed in the county aforesaid, State of California.  I am
     over the age of eighteen years and not a party to the within
4    entitled action; my business address is 16133 Ventura Boulevard,
     Suite 1200, Encino, California 91436.

5
     On **February 5, 2008**, I served the foregoing document described as
6    **PLAINTIFFS' INITIAL DISCLOSURES STATEMENT PURSUANT TO FED. R. CIV.
     P. 26(a)** on the interested parties in this action

7
       **X**   by placing _____ the original __**X**__ a true copy thereof
8    enclosed in sealed envelopes addressed as follows:

9

     William H. Emer, Esq.
10   Steven C. Gonzalez, Esq.
     PERKINS COIE LLP
11   1620 26th Street, 6th Floor,
     South Tower
12   Santa Monica, CA 90404-4013

13   David R. Ongaro, Esq.
     PERKINS COIE LLP
14   Four Embercadero Center,
     Suite 2400
15   San Francisco, CA 94111-4131

16

17   __**X**__  **BY MAIL**

18   _____  I deposited such envelope in the mail at Encino, California.
     The envelope was mailed with postage thereon fully prepaid.

19
     _____  As follows:  I am "readily familiar" with the firm's practice
20   of collection and processing correspondence for mailing.  Under
     that practice it would be deposited with U.S. postal service on
21   that same day with postage thereon fully prepaid at Encino,
     California, in the ordinary court of business.  I am aware that on
22   motion of party served, service is presumed invalid if postal
     cancellation date or postage meter date is more than one day after
23   date of deposit for mailing in affidavit.

24   _____  (BY EMAIL) A PDF copy of which was sent via email to the above
     email address.

25
       **X**   **(State)** I declare under penalty of perjury, under the laws
26   of the State of California that the above is true and correct.

27     **X**   **(Federal)** I declare that I am employed in the office of a
     member of the bar of this court at whose direction the service was
28   made.

                         _____
                         Michelle A. Tanzer